108   77
110  517
110  564
f110 565
108   77
112  474
f112 475
108   77
e115 465
f115 466
108   77
138  222

JAMES A. VOORHEES, Contestant, Appellant, v HIRAM ARNOLD, Incumbent.

**Australian Ballot:** IDENTIFICATION MARKS. Under code, sections 1119, 1120, providing that election ballots must be marked with a cross in the circle at the head of a ticket, or in squares opposite the names of the candidates, and that ballots marked in any other way, "so that such mark may be used for the purpose of identifying such ballot," shall be rejected—where the unauthorized mark is not of a character to. be read ly used for such purpose, or is made accidentally or through inexperience in the use of a pencil, the ballot must be counted, but where the mark may be so used and is made deliberately, the ballot must be rejected.

SAME. Where the voter writes the name of person below the printed ticket on the margin of the ballot, the ballot must be rejected.

SAME Where the printed ticket has a blank in which to write the name of a candidate, and the voter places a cross in the square opposite such blank, but writes no name therein, the ballot must be rejected.

SAME. Where a part of the ticket of one party is printed at the bottom of the ballot with blanks in which to write the names of candidates, and the voter marks his ballot in the squares only, placing a cross therein opposite the candidates of that party, except in one instance, and writes the name of a candidate in one of the blanks, but does not place a cross in the opposite square, the ballot must be rejected.

SAME. Where the voter writes the name of a constable below and on the margin of a ticket, 'without making a cross, the ballot should be rejected.

SAME. The law does not recognize the writing of a name on the ballot except by inserting it in the ballot in the proper place.

SAME. There are cases where the cross has many additional marks, made in an effort to mark properly, where, yet, every additional mark makes a wider departure from a correct cross and, in some, there is more than a cross. Yet, these should not be rejected unless the departure was deliberate and may be used to identify. In fact the departure may be so complicated that it may be held, as matter of law, not to constitute an identification mark, for the reason that the maker could not well describe it to another.

JURY QUESTION. A doubtful question as to whether unauthorized marks were made with deliberate intent, and can be used to identify the ballot, is one of fact for the trior.

SAME. Where a voter marks his ballot in the squares, in several of which it is doubtful whether the lines really form a cross, and in one of which the lines just meet, so that no cross is formed, the question whether the departure from the prescribed markings was deliberate, or merely accidental or careless, is one of fact for the trior.

SAME. Where a voter marks a ballot in the squares opposite the names of the candidates of one party, except in three instances, and opposite the name of the other party for one of the same offices is a dirty spot, as if rubbed with the finger, covering and extending below the square, but without the slightest indication of the making of a cross in the square, the finding of the court on the doubtful question of the voter's intent and the effect of such marking must prevail.

SAME. Where a voter places a cross in the circle at the head of the ticket of one party, draws a line from the top of the perpendicular line of the cross downwards to the horizontal at an angle of about thirty degrees, places a cross in the circle opposite the ticket of another party, and then attempts to rub it out, and leaves a dirty spot much larger than the circle and faint tracings of the cross in the circle, the rejection of the ballot will not be interfered with.

Appeal: REVIEW FOR APPELLEE. One who wins below may show without appealing or assigning error, that, upon the face of the record, the court below erroneously ru'ed against him and that if the right ruling had been made the error against appellant would be harmless.

TRIAL DE NOVO. The question whether a mark on a ballot was deliberate and usable to identify, is not tried de novo on appeal.

*Appeal from Jones District Court.*—HON. H. M. REMLEY, Judge.

FRIDAY, APRIL 7, 1899.

AT the general election in 1897, contestant was the Democratic, and incumbent the Republican, candidate for the office of sheriff of Jones county. The board of county canvassers, on the face of the returns, declared the incumbent, Arnold, elected, the returns showing a majority in his favor of seven. Voorhees contested the election, and the court of contest found Arnold elected by a majority of three. On appeal to the district court, the case was tried without a

jury, and again decided in favor of Arnold by a majority of four; and from a judgment in his favor Voorhees appealed. Arnold also appealing from certain rulings against him.— *Affirmed.*

*C. J. Cash, B. H. Miller, Geo. H. Bennett* and *Jamison & Smyth* for contestant.

*Ellison, Ercanbrack & Lawrence* and *B. E. Rhinehart* for incumbent.

Granger, J.—I. The legal propositions are exclusively as to the validity of ballots counted or rejected. The alleged defects are as to markings, and we have certified to us upwards of two hundred and forty ballots, because of the inaccuracy of those presented in the abstracts. As it is a law action, the case comes to us on assignment of errors, and counsel in its preparation, as well as this court in its consideration, have experienced a difficulty in the adoption of a system by which the multitude of questions may be considered without the labor of doing so in detail. For this purpose counsel have resorted to a system of classification by which ballots somewhat, or quite, similar as to the markings have been classed together, thus bringing together for consideration numerous assignments. As would be expected, counsel have not been able to agree in the particulars of classification, nor have we been able to use any system suggested by counsel or devised by us. The rulings of the district court were as to particular ballots, and we have found it necessary, in our examination of the case, to look to each ballot, and determine the question involved in its acceptance or rejection, independently of every other ballot. That we cannot, in an opinion, express conclusions on all these questions is apparent, nor is it necessary. We think it is proper, at the outset, to settle some general rules of law, as to ballot markings, that will, of themselves, be decisive of many of the questions presented; for many of them present

no disputed questions of facts for ascertainment, while others do present such questions.

Most of the questions go to the validity of the ballot as a whole, rather than as to its validity as a vote for the office of sheriff; that is, the questions are, mainly, if the ballot is not so marked that the mark may be used for the purpose of identifying the ballot, so that, under the law, it must be rejected. Ballots must be marked by a cross placed in the circle at the head of a ticket, or in squares opposite the names of candidates, and in no other way. Code, section 1119, 1120. In the latter section it is provided: "Any ballot marked by the voter in any other manner than as authorized in this chapter, and so that such mark may be used for the purpose of identifying of such ballot, shall be rejected." The purpose of this provision is to preserve secrecy of the ballot. Since the case of *Whittam v. Zahorik,* 91 Iowa, 23, was determined, the law has been somewhat changed, but, as to identifying marks, it is now substantially as we construed it to be then. We there held, because of a criminal provision against identifying marks, that the law, by implication, prohibited any person, including the voter, from so marking a ballot, and that such ballots could not be counted. The present law, in terms, requires that ballots marked so that the marks may be used for the purpose of identification shall be rejected. In that case, after a specification of particular marks fatal to a ballot because they could readily be used as identifying marks, we used this language: "It is not practicable to adopt a rule in regard to identifying marks which would be applicable to all cases. It will not do to say that all ballots which bear marks not authorized by law should be rejected. All voters are not alike skillful in marking. Some are not accustomed to using a pen or pencil, and may place some slight mark on the ballot inadvertently, or a cross first made may be clumsily retraced. It is evident that in such cases, and in others where the unauthorized mark is not of a character to be used readily for the purpose of identi-

fication, the ballot should be counted; but where the unauthorized marks are made deliberately, and may be used as means of identifying the ballot, it should be rejected." The language quoted is equally applicable to the present law, and the inference is clear that, in some cases, identifying marks are so apparent, or conclusively identifying, that the court may say, as a matter of law, that they may be used for that purpose, and hence the ballot should be rejected. The unauthorized marks, to be identifying, must be deliberately made, as we said in the *Whittam Case,* and not be merely accidental, or the result of inexperience in the use of pen or pencil, or a mere effort to correct what may be thought to be an improper marking. If a cross is placed outside the circle or square, instead of being placed substantially in it, as the law requires, or if the word "Yes" is written in the circle, instead of placing a cross there, it may be said, as a matter of law, to be deliberately done, and that it might be used for identification, and defeat the ballot. These are but two of many instances that could be mentioned. In this case, the markings in the circle, at the head of the ticket, are of great variety; some of them bearing evidence of being a deliberate departure from the requirements of making a cross, which must be two lines crossing each other. In nearly every instance there is a cross, and then added marks, and in some cases there are so many as to present a practically indescribable figure or character. In some of these extreme cases it is manifest that all was done in an effort to properly mark the ballot, even though every added mark was farther from the correct one. In some of these there is more than a cross in the circle, but for this reason the ballot is not to be rejected, unless the departure is deliberate and may be used to identify the ballot. On some of the ballots, in this case, where there is a wide departure from the legal requirements, we may safely say the unnecessary marks could not be used for identification, because the maker could never describe them to another so

far as to permit of their use for that purpose. In other cases it is doubtful whether they could be so used or not. In such cases the question is one of fact for the jury, because there might reasonably exist differences of opinion as to the fact. In such cases the ballot should be put in evidence, and the jury permitted, under instructions, to determine whether there has been a deliberate departure in the marking, and in a way that it might be used to identify the ballot. Many of the markings in this case are such that the findings of the district court conclude us, because they were purely questions of fact. There was no jury in the case, and the record shows that the rulings were upon the offers of the ballots as evidence; but it appears that the court, in making its rulings, determined the question of fact, and admitted or excluded the ballots, as it found the fact whether they should or should not be counted.          ,

II.    It will be well to notice some particular markings and defects that appear. In one ballot the voter wrote the name of a person for supervisor below the printed ticket, on the margin of the ballot. That it was deliberately done, and that it could be used to identify the ballot, there could be no doubt. The court properly rejected it.

III.    On some of the ballots the county ticket was printed in blank; that is, the names of the candidates were not printed in, but the official names appeared, as "For Auditor," "For Treasurer," etc., with a blank space for writing in the names of the persons voted for. In some cases the voter would put a cross in the square, but write in no name, and hence the cross in the square was without apparent purpose, and could have no use except to identify the ballot. Such ballots were excluded, and properly so.

IV.    What are known as Exhibits 8 and 12, being opposition votes for the office of sheriff, are in question; No. 12 having been counted and No. 8 rejected. No. 8 has a cross in the circle at the head of the Democratic ticket. The cross is sufficiently accurate. The voter has also drawn a line from the top of the perpendicular line

of the cross downward to the horizontal line, at an angle of about 30 degrees. It also appears that the voter placed a cross in the circle opposite the People's ticket, and then with thumb or finger, attempted to rub it out, leaving a dirty spot much larger than the circle, and faint tracings of the cross in the circle remain. On ballot No. 12 it appears that the voter expressed his choice of candidates by marking in the squares, and the votes were for the Republican candidates except three, where the marks were in the squares opposite the names on the Democratic ticket, one of those being Sheean for representative. Carpenter was the Republican candidate, and opposite his name, and covering the square, and extending below it, is a dirty spot, as if made by rubbing with the thumb or finger, but it is much less pronounced than the spot on No. 8, and there is not the slightest indication of a cross having been made in the square. In fact, it may be doubted how the spot came there. On No. 8 there is no doubt, and it is admitted, that it was made in an attempt to rub out the cross in the circle. The facts, as we state them, differ somewhat from the facts as stated by contestant, his reference being to the abstract, and ours to the original ballots. We do not think there was error in either respect. Where the question of fact is in doubt, we should not disturb the finding of the court below.

V. A voter indicated his choice by marking in the squares. Several of his markings do no more than have one line barely cross the other, so as to leave it somewhat in doubt if it really is a cross. In one of the squares the lines just meet; that is, one line just reaches the other, so that it is not a cross. Not being a cross, it is an unauthorized mark, and does not indicate a choice or vote for the particular candidate. It was for neither of the candidates who are parties here, and the question is, should the ballot have been excluded? Looking to the markings on the ballot, one is led to think there was no deliberate depar-

ture from the prescribed markings, but a mere accidental or careless' departure. However, the doubts leave the question as one of fact for the trial court. This ballot is but one of a number of which similar complaint is made.

VI. On one of the ballots the Democratic ticket was printed with the township ticket at the bottom in blank; that is, the office to be filled was designated as "For Constable," "For Trustee," etc. The voter expressed his choice of candidates by marking in the squares only. He gave his votes for Democratic candidates, except that he voted for incumbent for sheriff. In the blank space for trustee he wrote a name, and, by the express provisions of the law, to vote for the person whose name he wrote, he must place a cross in the square opposite the name. Code, section 1119. This he did not do, and hence the writing of the name was a deliberate act, and could surely be used for identification. The ballot was counted, when it should have been rejected. Another ballot for contestant was excluded where the voter wrote below the Republican ticket, on the margin of the ballot, a name for constable. There was no cross to indicate a vote for the person, and the choice had been expressed as to the others by marking the squares. The difference in the two cases is that in one case the name was written in the printed ticket, but not voted, while in the other it was written below the printed ticket, and not voted. The ballot was properly rejected. It is proper to state here that the law does not recognize the writing of a name on a ballot except by inserting it in the ballot in the proper place. Code, section 1119.

VII. These considerations are sufficient to enable us to reach a conclusion as to the case. In doing so, we have felt obliged to take each ballot, coming within the range of the errors assigned, and, guided by the rules we have suggested, so far as applicable, we have determined each particular question. Errors have appeared as to both parties, and the ultimate question is whether or not, on the whole case, the

judgment should be reversed because of prejudicial error. Of course, errors as to the admission of ballots in evidence that would not affect the result would not be prejudicial. This has led us, after reaching a conclusion on each assignment of error, to determine how the case or result is affected, in view of all the rulings. Our conclusion does not change the result, but would slightly increase the majority for the incumbent over that found by the district court. In any event, the result is close. Were we to determine questions of fact in cases where it is doubtful whether the unauthorized markings were deliberate, and might be used to identify the ballot, which we hold is the province of the district court, the result might and might not be different. The case has been argued somewhat as if that was our province.

VIII. There is a motion by appellant to dismiss the appeal by incumbent on the ground that it is an action at law, and no appeal is permissible, except from a final judgment or order, and no judgment has been rendered against incumbent. Other grounds of the motion present the same legal proposition. The question presented is this: Where a judgment is entered for one party, and the other party appeals, may the party in whose favor the judgment is,—if there are ruling against him on a trial which, if erroneous, would show erroneous rulings in his favor to be without prejudice, and thus preserve his judgment,—by a cross appeal or otherwise, present and have such questions considered? We think it not necessary to consider the question of his right to appeal. In *Bank v. Wright*, 84 Iowa, 728, where the party in whose favor the judgment was did not appeal, and presented no assignment of error, but, on appeal by the other party, urged that the district court erred by its ruling in favor of the appellant, because of which appellant was not prejudiced by the errors for which we reversed the case, we at first said the point could not be considered, because the party urging the error had not appealed.

On an application for a rehearing, we changed the holding, and held that, without an appeal or an assignment of error, appellee might protect a judgment in its favor, if entitled thereto on the face of the record, by showing from the record that the errors of which appellant complained were without prejudice. The incumbent is strictly within that rule in this case, and was entitled to have the questions urged by him considered, regardless of the appeal. The judgment will stand AFFIRMED.