LORETTA R. CHENOWETH, appellant, v. EDWARD W. FLYNN et al., trustees of the Martin Flynn Estate, appellees.

No. 49808.

(Reported in 99 N.W.2d 310)

NOVEMBER 17, 1959.

Holliday, Miller, Myers & Stewart, by Joseph B. Joyce, of Des Moines, for appellant.

Irish & Haughey, of Des Moines, for appellees.

HAYS, J.—██ Plaintiff, alleging defendants were negligent in installing and maintaining in their lobby a floor covering so constructed that it would catch the shoe of a person rightly passing over it and suddenly trip and throw such person, seeks damages for injuries alleged to have been sustained when the heel of her shoe caught in a floor mat causing her to stumble. Defendants obtained a directed verdict and plaintiff appeals. On this appeal the record is viewed in the light most favorable to plaintiff. Miller v. White Bronze Monument Co., 141 Iowa 701, 118 N.W. 518, 18 Ann. Cas. 957; Wood v. Tri-States Theater Corp., 237 Iowa 799, 23 N.W.2d 843.

Defendants own and operate the Flynn Building located at Seventh and Locust Streets in Des Moines, Iowa. For servicing various offices located in this six-story building, elevators are maintained. They are located at the east end of a lobby, entrance to which is from Seventh Street on the west. From this entrance to the elevators is a distance of twenty-three feet seven inches. During the winter season, as is the custom in many office buildings in Des Moines, floor mats were placed on the floor approaching the elevators to assist in removing ice and snow from the

shoes of people using the elevators. In January 1957 new mats were installed. They were of corded rubber construction and were ten sixteenths of an inch thick. Around the outside or edge was a bevel or nose which eliminated any abrupt rise from the floor. Between the cords, which ran lengthwise and crosswise, were holes or crevices one-half inch wide and long. The mat, built in three sections but fastened into a continuous one, was sixteen feet one inch long and extended from about five feet east of the entrance east to within two feet four inches of the elevator. With one exception this mat differs from other mats made by the same party, used in buildings in Des Moines, in three respects. It is of corded rubber, the others, of pure gum rubber; it is ten sixteenths of an inch thick, the others, seven sixteenths; it, like the others, has holes or crevices one-half inch wide, but in length they are one quarter of an inch longer than the others.

The plaintiff was an employee in an office located in the building and is conceded to have the status of an invitee. On the morning of February 13, 1957, she entered the lobby from Seventh Street. To quote her testimony:

"As I entered the swinging door of the building on the date in question, I was looking directly ahead. The elevator door was open. And as I went in there I just got one foot on the mat and it threw me into the elevator. The mat took my shoe off. My shoe caught in the mat and it threw me. It was the left shoe that was caught, the heel, pulling it completely off my foot. * * * I didn't fall down on the floor, I lunged. It was about three times, to keep from falling."

She had been using the mat daily since it was installed, without difficulty. She was wearing a medium high-heel shoe, the heel being about two and a quarter inches high with about a half-inch tip.

The elevator operator testified she saw plaintiff catch her heel in the mat and lunge forward. She also stated that within three weeks prior to the accident people would catch their heels in the mats, but not fall; that in conversation with a Mr. William Condon, building maintenance man, she told him people were catching their heels in the mats, but that nothing was done about it. The record shows these mats were used the rest of that winter and the one following.

While the motion to direct a verdict contained numerous grounds, it was sustained upon the ground that plaintiff had failed to establish any primary negligence on the part of the defendants, which ruling is assigned as error.

■ I. The law applicable here appears to be well settled. The possessor of real estate is not an insurer of invitees who come upon his property, nor does the mere fact that an accident happened, of itself, create liability. His duty is that of reasonable care to keep the property in a reasonably safe condition for the contemplated use. Primus v. Bellevue Apartments, 241 Iowa 1055, 44 N.W.2d 347, 25 A. L. R.2d 565; Reuter v. Iowa Trust & Savings Bank, 244 Iowa 939, 57 N.W.2d 225. This duty applies only to defects or conditions which are in the nature of dangers, traps, snares, pitfalls, and the like, which are not obvious or known to the invitee but which are or in the exercise of due care should be known to the possessor. It is predicated upon a superior knowledge. Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252, and authorities therein cited.

■ II. Examining the facts before us in the light of the established legal principles, we think the plaintiff established a prima-facie case sufficient to generate a jury question upon this issue of primary negligence. The record shows that plaintiff was wearing a shoe with, what might be called or at least she so describes it, a moderate heel such as is generally being worn. During a period of three weeks prior to the accident, which was the time the mat had been in use, people were catching their heels therein, which fact was made known to the defendants through knowledge of their maintenance man, and nothing was done regarding them. These facts, we think, present a question for the jury, not whether the mats were safe, but whether or not, in using them, defendants exercised reasonable care to keep the premises safe for their contemplated use. Parsons v. H. L. Green Co., 233 Iowa 648, 10 N.W.2d 40; Schafer v. Hotel Martin Co., 249 Iowa 866, 89 N.W.2d 373. On the answer to this question reasonable minds might well differ and it should be determined by a jury, although we concede that it is a close question. Wood v. Tri-States Theater Corp., supra, cited and relied upon by the appellant, presents a much stronger factual situation than does the instant one.

16

■ III. The motion for a directed verdict contained the allegation that plaintiff had failed to show that the stumbling on the mat was the proximate cause of the alleged injuries. Appellees urge this ground in support of their directed verdict even though it was overruled by the trial court. This they may do. Voorhees v. Arnold, 108 Iowa 77, 78 N.W. 795; Pappas v. Evans, 242 Iowa 804, 48 N.W.2d 298.

Plaintiff alleges in her petition that she "was injured in that her left great toe was twisted and broken by her fall, and a bone spur was broken off and lodged in plaintiff's toe causing swelling and infection in her foot and leg, finally necessitating surgery to remove said bone spur."

■ "Proximate cause" is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. McClure v. Richard, 225 Iowa 949, 282 N.W. 312. "Proximate cause" is a primary moving cause or predominating cause from which the injury follows as a natural, direct and immediate consequence and without which it would not have occurred. Daly v. Illinois Cent. R. Co., 248 Iowa 758, 80 N.W.2d 335. It is not necessary to a defendant's liability that the consequences of his negligence should have been foreseen, and it is sufficient if the injuries are the natural, though not necessary or inevitable, result of the wrong. Cowman v. Hansen, 250 Iowa 358, 92 N.W.2d 682. Negligence to be actionable must be the proximate cause of the injury. Brewer v. Johnson, 247 Iowa 483, 72 N.W.2d 556.

■ Medical witnesses are often offered as experts. Their testimony is admitted upon the theory that the subject matter of the particular inquiry is so peculiarly within the range of scientific knowledge that to exclude it would mean a denial of the only proof competent to prove the fact. Without it a jury of laymen must of necessity resort to conjecture in determining the question. Where such experts express opinions merely that certain conditions might cause a certain injury, such opinions are merely stating a possibility, which, if standing alone, would hardly be said to meet the burden plaintiff must carry. Mere possibility does not ordinarily generate a jury question, it leaves the jury to speculate upon a speculation.

■ Expert testimony was used in the instant case. Dr. Ralph M. Henery, a chiropodist, testified that he saw plaintiff in May of 1957; that at that time she had an ulceration on the left great toe. There was no bleeding but there was seepage. It was a condition sufficient to cause pain. He treated her for the condition and gave her ointment to keep on the ulceration. He would not say whether or not the accident could have been a competent cause of the injury.

Dr. Joseph A. Juliano, a chiropodist, saw her shortly thereafter. He states that her great toe was very tender and she complained of great pain. There was an ulcer about one eighth to one fourth of an inch in diameter under her left big toe and from which there was a dark discharge, seepage; that an ulceration is usually the result of a trauma. He stated that in his opinion, the accident could be a producing cause of the injury for which he treated her, if she was wearing high heels.

Dr. Douglas N. Gibson, an M.D. and bone specialist, saw her in late August of 1957. At that time she had a draining sinus under her left great toe which she had had for six months. The toe was infected and she had a spur on the end bone of the big toe, it was right under the ulcer. He stated he had never seen an ulcer in an area that has a history of an accident and would not say an accident could aggravate such a thing.

While we are not called upon to decide whether or not this testimony, if standing alone, would generate a jury question as to proximate cause, there is a direct statement that it could, and some, at least by inference, that it would not.

However, there is other testimony bearing upon this question. Plaintiff, a competent witness as to her own physical condition, states that she had never experienced foot trouble prior to her accident. After the accident her foot was bruised and within a few days, a seepage developed. She at once commenced treating the foot by nightly applications of hot packs to alleviate the seepage, a procedure she followed nightly until she contacted Doctor Henery some six months later. She constantly suffered pain and always wore a bandage upon the foot.

■ It is a rule too well established to require the citation of authority that the question of proximate cause is generally for the jury to determine, although the line of demarcation between

what is sufficiently proximate and what is too remote is often a thin one. If, upon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable and improbable in the light of common experience, such negligence would be a remote rather than a proximate cause. If, however, by a fair consideration of the facts based upon common human experience and logic there is nothing particularly unnatural or unreasonable in connecting the injury with the negligence, a jury question would be created. In the instant case, taking plaintiff's testimony together with the expert testimony, light though it may be, there is certainly nothing unreasonable or unnatural, based upon human experience and common sense, in connecting the negligence with the injury. We think a jury question was created thereby. See, in this connection, Rose v. John Deere Ottumwa Works, 247 Iowa 900, 76 N.W.2d 756.

For the reasons set forth in Division I the judgment is reversed and the case remanded.—Reversed and remanded.

All JUSTICES concur.