HAROLD CHRISTIANSON, appellant, v. DONALD KRAMER, d/b/a
KRAMER SHOE REPAIR SHOP; ARTHUR A. NEU, executor
of estate of Adda Beverly, appellees.

No. 50896.

(Reported in 122 N.W.2d 283)

JUNE 11, 1963.

Wunschel & Schechtman, of Carroll, for appellant.

Vincent F. Powers, of Omaha, Nebraska, and Leighton A. Wederath, of Carroll, for appellee Donald Kramer, d/b/a Kramer Shoe Repair Shop.

242

Floyd E. Page, of Denison, and Edward S. White, of Carroll, for appellee Arthur A. Neu, executor of estate of Adda Beverly.

LARSON, J.—Defendants' motions for directed verdict, which were sustained, challenged the sufficiency of the evidence of defendants' negligence, of proximate cause, and of plaintiff's freedom from contributory negligence. We think the case should have been submitted to the jury. Our review of the evidence, of course, must be made in the light most favorable to plaintiff.

On January 6, 1960, at about 10 a.m., the plaintiff, 26 years of age, purchased two cups of coffee at a tavern a half block from the stairs leading to the basement shoe shop of the defendant Kramer and proceeded to carry them, one in each hand, to that shop. As he went down the steps he slipped and fell, severely injuring his wrist when a broken cup pierced it. The weather that day was cool, but the sun was shining. Five days before, there had been a two-inch snowfall and, since the temperature from January 1 to January 6 had ranged from 17 below zero to 35 degrees above, the latter being reached on January 6, there was still over two and one-half inches of snow on the ground on that date. The streets and sidewalks, however, were clear.

The two-story building involved herein, known as the Commercial Bank Building, in Carroll, Iowa, was owned by the estate of Adda Beverly. Arthur A. Neu, executor, was named a defendant herein and will be referred to as defendant owner. Along the east side of this building appear several stairwells guarded by iron railings, each leading to basement business establishments. The defendant Kramer, a tenant, maintained one of these shops. In order to reach it one must go down two steps from the sidewalk, turn left, and go down eight steps some four feet wide to the doorway leading to Kramer's Shoe Shop. On the east or outside wall of the stairwell was a handrail, and on the inside about halfway down was a window to admit light into the shop.

The record discloses there is a ledge on the second story of this building extending out over these stairwells about a foot wide, which extends the length of the building. There are no

eave troughs or canopies over the stairwells, so that when any ice and snow accumulated on the roof and ledge and started to melt, water drips onto the steps below. If it is sufficiently cold, the water in the stairwell will freeze creating a hazard to anyone attempting to descend or transcend the stairs.

It is plaintiff's contention that he produced substantial evidence to prove the hazardous condition as it existed on January 6, 1960, when he fell, that it was known or in the exercise of due care should have been known to both the owner and the tenant, and that although he exercised ordinary care, he was unaware of the danger or hazard at the time of his fall. Defendants contend the evidence was insufficient to establish any of these allegations and that their negligence, if any, was not the proximate cause of plaintiff's injury.

I. The law as applied to such matters seems well settled. The owner and possessor of real estate is not an insurer of invitees who came upon his property, nor does the mere fact that an accident happened, of itself, create liability. The inviter's duty is to use reasonable care to keep the property in a reasonably safe condition for the contemplated use. Chenoweth v. Flynn, 251 Iowa 11, 15, 99 N.W.2d 310, 311, and citations. It is often stated this duty applies only to defects or conditions which are in the nature of dangers, traps, snares, pitfalls, and the like, which are not obvious or known to the invitee but which are or in the exercise of reasonable care should be known to the possessor or owner. This rule was fully considered by us in Atherton v. Hoenig's Grocery, 249 Iowa 50, 54, 86 N.W.2d 252, where numerous authorities were reviewed. The rule, of course, is predicated upon an owner's superior knowledge of the danger. 38 Am. Jur., Negligence, section 97, pages 757 and 758. Also see Restatement, Torts, Volume 2, section 343. While superior knowledge of the owner or occupier, of defects or dangers is not presumed, where the evidence shows such knowledge could have been obtained in the exercise of reasonable care, superior knowledge may be inferred. Robinson v. Fort Dodge Limestone Co., 252 Iowa 270, 277, 106 N.W.2d 579.

II. There is evidence in this record which would sustain a finding that plaintiff was an invitee. In fact, there seems

to be little dispute on this question. In addition to his trip to the shoe shop with coffee on this morning, plaintiff testified he went there to ask defendant Kramer whether he could repair. a split in an overshoe he had salvaged from the discard at Penney's store a few days before. A finding by the jury that he was at the time of the accident a business visitor would clearly be justified.

III. The evidence, we think, would also sustain a finding that both the defendant owner and the defendant tenant knew or should have known there was danger at that time and place to invitees or others using the stairway. Plaintiff testified Kramer told him they had experienced trouble from ice forming from drippings off the ledge above this stairwell, and that a couple of years before a woman had fallen there. Kramer's employee, Louis Hoffman, testifying for plaintiff, said it was his duty to keep these steps clear of ice and snow. He said he usually cleaned them each morning soon after he came to work, but that on this morning, since it had not snowed that night, he did not look for ice. He testified:

"I don't know if the steps were free from ice and snow that morning *because I never paid any attention to it.* I observed the steps leading to the Kramer Shoe Shop * * * after the accident happened and as far as I could see there were just a couple of little bunches of ice right by the wall." (Emphasis supplied.) But he also said: "In the past we had had problems with ice forming on the steps all the time. After I cleaned the snow and ice off, I still continued to have problems from dripping off the ledge. The ledge I'm referring to is on the building, roof ledge, or whatever you call it. * * * The water would drip from the roof onto the steps and that's the water that formed the ice. On other days except that day, I had used salt."

There was other evidence these steps had been cleaned and salted the day before..

Since reasonable minds may well differ on this issue, it is a question especially appropriate for the jury. It also appears that Kramer had, by arrangement with the defendant owner, undertaken to keep these steps clean and clear, raising a per-

missible inference that the defendants were aware of the potential danger. Up until this time the tenant had done well because, as plaintiff observed, the steps had always been clean when he used them in the past. Under this evidence there can be little doubt that both defendants knew of the potential danger when the weather was such as to permit thawing on the ledge and freezing in the stairwell, especially when there was an accumulation of snow on the ledge above. Such were the conditions on this day.

Defendants contend, however, there was an insufficient showing that the ice was on the steps for a period long enough to charge them with notice thereof. It is true in certain potential danger cases there is some conflict of authority, but the better rule would seem to require the inviter to take prompt steps to prevent the occurrence of the hazard or to adequately warn invitees of the potential danger inviter knew existed. No warning was given and, since it was defendants' duty to use ordinary care to warn plaintiff of any danger which defendants knew and of which plaintiff was not aware, the jury could find defendants negligent therein. Stafford v. Gowing, 236 Iowa 171, 177, 18 N.W.2d 156, 158.

Clearly this is not the case where one is given a reasonable time to remove the ice or snow formed by recent storms such as we discussed in Reuter v. Iowa Trust & Savings Bank, 244 Iowa 939, 57 N.W.2d 225. Delayed action here could not be justified as impracticable or inexpedient.

It is well established that "negligence" is want of ordinary care under the circumstances, and that "ordinary care" means such care as an ordinarily prudent person would exercise. Nesci v. Willey, 247 Iowa 621, 631, 75 N.W.2d 257, and citations. Under the circumstances disclosed by this record, giving that evidence the strongest inferences reasonably deducible therefrom (White v. Center, 218 Iowa 1027, 254 N.W. 90), the jury could find defendants did not exercise ordinary care. No canopy was erected, so that ordinary care would seem to require a warning or continuous salting at such times to protect invitees.

We have reviewed the cases cited from other jurisdictions relating to gum on stairways and banana peelings or other slip-

pery substances that could be expected in certain business establishments, and conclude that where the factors are evident and there is a great probability that a dangerous condition will develop, the inviter's burden in discharging his duty to exercise reasonable care is a heavy one. While those cases are not exactly in point here, we think the better rule in matters such as ours, where minds of reasonable men might differ, the question as to whether one has performed that duty should be left to the jury. McGrean v. Bos Freight Lines, 240 Iowa 318, 323, 36 N.W.2d 374, 377; Mahoney v. J. C. Penney Co. (1962), 71 N. M. 244, 377 P.2d 663; Presnell v. Safeway Stores, Inc. (1962), 60 Wash.2d 671, 374 P.2d 939; Saari v. S. S. Kresge Co. (1960), 257 Minn. 290, 101 N.W.2d 427.

We conclude under this record the jury might well find both defendants were actually, as well as inferentially, aware of the icy condition on the step, or step and a half, where plaintiff fell, and were negligent in not warning plaintiff of the danger or in not salting or removing the ice that morning.

■ IV. Defendants correctly contend there is no liability for injuries from dangers that are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant of the premises. Atherton v. Hoenig's Grocery, supra; 38 Am. Jur., Negligence, section 97, pages 757, 758.

■ The record as to plaintiff's knowledge, or lack of knowledge, of the situation and danger is substantial. He testified he had made numerous trips down those stairs to the Kramer Shop, that he had gone there twenty of the last thirty days and many times before, that twice a week he removed trash from that shop in his disposal business, and that he had always found the steps clear and had never observed the water dripping on the steps nor the salting or sanding of them by Hoffman. He testified on this morning he saw no ice on the steps as he started down, but after the fall he saw a patch of ice extending from the building out about a foot on the fourth or fifth step. To the question, "Did you see any snow or ice on the steps going to the Kramer Shoe Shop at that time?" he answered, "No". To the question, "Did you at that time observe the steps before you went down?"

he answered, "They looked clear." To the question, "Did you see any ice at anytime before you fell?" he said, "No, I didn't."

It is true on cross-examination plaintiff testified as follows:

"Q. Did you look as to what was on the stairs that morning before you started down? A. Yes. * * * Q. And in that discovery deposition, were any questions asked to you as to whether you looked down the stairs? A. Yes. Q. Do you recall what your answer was? A. I said no, but I said no and pardoned myself and said I did look. Q. You say then that you did look down the stairs? A. Just looked."

While this testimony may relate more to the question of contributory negligence, if any, we are satisfied that when taken with other evidence it would justify the jury in concluding the ice was not readily discoverable from above, that the danger was not reasonably apparent, and that plaintiff should not be charged as a matter of law with knowledge of the condition of the step at that time. Thus, as related to the plaintiff in many respects, this ice took on the attributes of a hidden defect or hazard. See Vollmar v. J. C. Penney Co., 251 Iowa 1026, 103 N.W.2d 715.

■ ■ V. The issue as to whether plaintiff was guilty of contributory negligence should also have been submitted to the jury, and the court's action in directing a verdict on that ground cannot be sustained. Again, in our review the evidence must be reviewed in the light most favorable to the plaintiff. Mongar v. Barnard, 248 Iowa 899, 903, 82 N.W.2d 765, 768, and citations. When this is done, it is fairly clear the issue was one of fact for the jury, not of law for the court. This issue only becomes one of law for the court in the exceptional case where plaintiff's want of reasonable care is so manifest and flagrant as to convince all fair minds plaintiff did not exercise the caution for his own safety which marks the conduct of ordinarily prudent men, and it is ordinary care, not the highest degree of care, that is required. Tucker v. Tolerton & Warfield Co., 249 Iowa 405, 409, 86 N.W.2d 822, and citations.

■ ■ We said in Weilbrenner v. Owens, 246 Iowa 580, 582, 68 N.W.2d 293, 294: "We have held many times that if there is any evidence tending to establish plaintiff's freedom

from contributory negligence that issue is for the jury." We are satisfied there is substantial testimony here tending to show plaintiff acted with at least ordinary care. He was not required to anticipate negligence on the part of the defendants. Tucker v. Tolerton & Warfield Co., supra, and citations; Stupka v. Scheidel, 244 Iowa 442, 449, 56 N.W.2d 874, 878.

Plaintiff testified he had gone up and down these steps hundreds of times, twenty of the last thirty days, and had never encountered any trouble from ice and snow thereon. The steps looked clear that morning and the court could not say as a matter of law that he must have seen the ice or, in the exercise of reasonable care, should have seen it. It apparently was not easily seen from above, but could be seen from below. Thus plaintiff's assumption it was clear from a look seems reasonable, and while it may be argued to the jury his care in observing the actual condition of the steps was not sufficient, and that he should not carry a cup of coffee in each hand while descending a concrete stairway, the evidence does not permit a finding as a matter of law that his want of care was so manifest and flagrant as to convince fair minds that he did not exercise caution for his own safety in these matters. As hereinbefore stated, it cannot be said as a matter of law that plaintiff was under a duty to have seen the ice before he started down. McGrean v. Bos Freight Lines, supra, 240 Iowa 318, 323, 36 N.W.2d 374, 377.

Neither Mr. Kramer nor his employee saw this patch of ice when they descended the stairs shortly before the accident, but on careful examination after the accident they also discovered the patch of ice involved.

Defendants contend plaintiff should have descended the steps on the outside or railing side of the stairs, and that he did not use due care in using the right-hand lane. We find no merit in that contention, for the stairs were sufficiently wide for persons to pass on them without difficulty. Here the evidence shows plaintiff met and passed a woman coming up the stairs on the railing side, and he said he fell on the fourth or fifth step from the bottom just as he passed her. Defendants argued plaintiff should have waited on the platform above until she came up, and that position may be argued to a jury, but it is clear he was

under no duty to do so. It could not be assumed that one side of the stairs was safe and the other not safe, even though one side had a handrail to aid persons using the stairs.

Plaintiff contends this woman distracted his attention from the place where he stepped when he fell and this would excuse his failure to see the ice. We do have a line of cases which sustain the contention that a distraction might well excuse a failure to see an obvious defect when the distraction is caused by the defendant. Corrigan v. Younker Brothers, Inc., 252 Iowa 1169, 1174, 110 N.W.2d 246, and citations. Such authorities are not particularly helpful in this case, for we do not think this is a distraction case. We have already determined there was substantial evidence that the ice upon which plaintiff slipped and fell was not obvious from above, that plaintiff looked at the steps, and that the jury could find he had exercised due care thereafter in proceeding down on the right-hand side thereof. Whether he glanced at her as they passed is not a controlling factor here.

It is defendants' further contention that plaintiff did not act as a reasonably prudent man in carrying a cup of coffee in each hand with his fingers through the cup handles. This, of course, is a good jury argument, but we cannot find in that fact such a flagrant disregard of due care as to convince all fair minds that he was not exercising caution for his own safety. He had done the same thing many times before and had experienced no difficulty descending these steps.

Nevertheless, we are satisfied it was for the jury to decide whether plaintiff was negligent in taking coffee to his friend's establishment that morning under the circumstances and, if so, whether that negligence contributed to this accident and injury.

██ ██ VI. "Proximate cause", we have often said, is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred. Chenoweth v. Flynn, supra, 251 Iowa 11, 16, 99 N.W.2d 310; Hiller v. Lenz, 253 Iowa 64, 69, 111 N.W.2d 278, and citations; McClure v. Richard, 225 Iowa 949, 282 N.W. 312. It is a primary moving cause or predominating cause from which the

injury follows as a natural, direct and immediate consequence, and without which it would not have occurred. Daly v. Illinois Central R. Co., 248 Iowa 758, 80 N.W.2d 335.

It is well settled that generally the question of proximate cause is for the jury to determine. Hiller v. Lenz, supra. We think it is here. The rule seems to be that if, upon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable and improbable, in the light of common experiences, such negligence would then be a remote rather than a proximate cause. Chenoweth v. Flynn, supra. There was nothing unnatural, unreasonable or improbable in the resulting injury here as a result of the fall. It seems fairly clear to us that there was nothing remote in the connection between the injury to plaintiff's wrist from the cup broken by his fall on this icy step. It rather seems, upon common human experience and logic, any breakable object an invitee might be carrying would be a probable source of injury should he fall while using a defective means of ingress and egress to a business establishment.

There is here ample evidence, viewed prospectively and retrospectively, from which a jury could find a direct and immediate causal connection between defendants' negligence, if any, and plaintiff's injury. It was, therefore, a fact question for the jury and should have been submitted to it. As bearing on this matter, also see Rose v. John Deere Ottumwa Works, 247 Iowa 900, 76 N.W.2d 756.

VII. Appellant raises some other questions relating to the rejection and admission of evidence. Since the matter is to be sent back for retrial, they need not be given lengthy consideration here. By way of caution, however, we may state that greater care need be exercised in the admission of certain unrelated character evidence in this civil action which might affect substantial rights of the parties. It would appear that testimony as to plaintiff's prior drinking habits had no bearing on the issues involved. In 32 C. J. S., Evidence, section 423, page 55, it is stated:

"As a general rule the character of a party to a civil action is not a proper subject of inquiry, for, while it is recognized that

ground for an inference of some logically probative force as to whether or not a person did a certain act may be furnished by the fact that his character is such as might reasonably be expected to predispose him toward or against such an act, this consideration is outweighed by the practical objections to opening the door to this class of evidence."

While there are exceptions to that rule, we fail to find in this case any relationship between his alleged former drinking habits which would tend to predispose plaintiff in failing to see the ice and to slip and fall on the icy steps this January morning. There is not the slightest evidence he had been drinking beer on this date. Also see 20 Am. Jur., Evidence, section 319, page 299.

Being satisfied the trial court erred in directing a verdict in this matter, the verdict and judgment must be set aside and a new trial granted.—Reversed and remanded.

All JUSTICES concur.