OSCAR A. ANTHES, appellant, v. FERN R. ANTHES, appellee.

No. 50797.

(Reported in 122 N.W.2d 255)

June 11, 1963.

Rehearing Denied September 17, 1963.

John G. Vernon, of Marion, and Fisher & Pickens, of Cedar Rapids, for appellant.

Lynch, Dallas, Smith & Harman, of Cedar Rapids, for appellee.

Snell, J.—This is a farm accident case.

Plaintiff and defendant are brothers, farmers and neighbors. They customarily help each other on an uncompensated exchange of work basis.

In the fall of 1957 near the end of defendant's corn harvest he acquired a large wire mesh corncrib for the storage of ear corn. The crib was delivered to defendant's premises in a disassembled condition. Defendant, with the help of his wife, assembled and erected the crib with the exception of the roof. His father and brother (plaintiff) helped with the roof.

Entrance to the crib was by a door about six feet high and

three feet wide with slip-in boards across the opening to keep the corn in place. The crib rested on a concrete floor.

A wire mesh horizontal sectional tunnel in the form of a half cylinder extended from a door a little more than halfway into the crib. The tunnel sections were about two feet long and from twelve to fifteen inches high. The horizontal tunnel was to serve two purposes, first, to aid in ventilating and drying the ear corn and second, to provide space for the insertion of a sheller drag during corn shelling operations.

Cylindrical wire mesh vertical tunnel sections placed end to end from the floor upward were installed to aid in ventilating the crib and drying the ear corn.

When used for the first time in the fall of 1957 the section ends of the horizontal wire mesh tunnel were overlapped thus adding some extra strength to support the weight of the corn resting thereon. The vertical wire mesh tunnel rested on the floor of the crib, near the center and beside the horizontal tunnel.

The 1957 corn stored in the crib was later shelled out without incident.

When the crib was put in use for storage of the crop in 1958, in order to permit the horizontal tunnel to extend farther into the crib, the sections were not overlapped. The vertical sections instead of being placed on the floor were placed on top of a horizontal section and rested thereon. No other support was provided. The vertical tunnel was composed of four sections having a diameter of fourteen inches and one section with a diameter of ten inches. The small section was at the top and was held in place with binder twine. Over the top of the vertical section, which did not extend to the top of the corn when the crib was filled, the defendant placed a burlap sack and a bucket to prevent shelled and ear corn from entering the tunnel. The vertical tunnel was stabilized only with binder twine and surrounding corn.

A day or two prior to September 29, 1959, defendant arranged for the shelling of the 1958 corn stored in the crib. He engaged a sheller and arranged for necessary help, including truckers and shovelers.

Defendant told the plaintiff that he (defendant) was going

to shell corn and if plaintiff did not have anything to do "come on over." Defendant said that if part of the help did not show up plaintiff would be available. Plaintiff agreed. He went to defendant's farm at the suggested time.

On September 29, 1959, shelling operations began. The sheller drag to carry the corn from the crib to the sheller was inserted into the horizontal wire mesh tunnel, but it met an obstruction so that insertion to the full length of the tunnel was not possible. One of the expected shovelers did not appear. More help was needed so plaintiff helped generally. As shelling operations progressed and the corn near the door of the crib was removed plaintiff and other shovelers entered the crib, raked down the corn and shoveled it into the sheller drag. As the corn was removed, exposed sections of the horizontal tunnel were removed to permit access to the sheller drag.

Extra labor, especially for the shovelers, was required because the sheller drag did not extend into the crib for its full length.

As the exposure of the horizontal tunnel progressed it became apparent to the plaintiff that the obstruction was caused by a crushing of the horizontal tunnel. Thinking that he could relieve the obstruction by lifting up on the top of the horizontal tunnel, plaintiff took hold of the wire mesh and attempted to raise it slightly. As he did so the vertical tunnel and surrounding corn came down. Plaintiff was thrown to the floor and immediately suffered pain in his back.

Plaintiff claims that his back was injured by being struck by the falling top section of the vertical tunnel. Defendant controverts the sufficiency of the evidence as to the cause of plaintiff's back injury. We will discuss this question of causation in a subsequent division.

Plaintiff alleged in his petition his presence in the corncrib at the time of the shelling operation, the collapse of the ventilators and his injury. Plaintiff alleged his own freedom from contributory negligence, negligence on the part of the defendant, proximate cause, and damage. Plaintiff alleged that defendant was negligent in the construction and installation of the tunnels; in permitting plaintiff to be in an improperly erected corn-

crib without notice of the fault; and failure to warn the plaintiff as to the method of installation.

Plaintiff's petition contained no statement as to his status as invitee, employee or otherwise at the time of his injury.

Defendant moved to dismiss plaintiff's petition for the reason that it failed to allege any ultimate facts which would give rise to the existence of any legal duty on defendant's part to avoid negligently injuring plaintiff. The motion to dismiss was overruled. Before trial began defendant renewed his objections and objected to all of plaintiff's evidence for the reason that there was no showing of the relationship between plaintiff and defendant. By agreement of counsel and approval of the trial court this objection stood throughout the trial. It was included in a motion for directed verdict made at the close of plaintiff's testimony.

The trial court sustained defendant's motion for directed verdict on other grounds hereinafter discussed and plaintiff appeals.

Defendant urges as his first ground for affirmance error in the refusal of the trial court to sustain defendant's initial motion to dismiss. This problem should be determined first.

I. Even though not the basis of the trial court's ruling, in this appeal appellee is entitled to argue the grounds of his motion to direct or dismiss properly raised in the trial court. Mooney v. Nagel, 251 Iowa 1052, 1055, 103 N.W.2d 76, and cases cited. If any reason properly raised in the trial court was good the motion was properly sustained. Corrigan v. Younker Brothers, Inc., 252 Iowa 1169, 1172, 110 N.W.2d 246.

From the evidence it now appears, and plaintiff now argues, that he was an invitee on defendant's premises and that his rights and defendant's responsibilities should be determined accordingly.

To sustain a recovery on the theory of defendant's negligence it must appear that there existed at the time and place where the injury was incurred a duty on the part of the defendant and a corresponding right in the plaintiff for protection according to his status. LeClere v. Iowa Electric Light and Power Co., 254 Iowa 779, 785, 119 N.W.2d 203, 207.

There can be no actionable negligence on the part of the defendant in the absence of the breach of some duty owed to plaintiff. Lagerpusch v. Lindley, 253 Iowa 1033, 1037, 115 N.W.2d 207.

Where as here a doubtful pleading is attacked by motion before issue is joined it will be resolved against the pleader. Reed v. Harvey, 253 Iowa 10, 13, 110 N.W.2d 442. If, however, the petition does allege ultimate facts upon which plaintiff might recover and states a claim under which evidence may be introduced in support thereof, or if attack is delayed, the complaint should be construed in the light most favorable to the plaintiff with doubts resolved in his favor and the allegations accepted as true. Newton v. Grundy Center, 246 Iowa 916, 921, 70 N.W.2d 162. When viewed from proper perspective the statements in the Reed and Newton cases are reconcilable.

Defendant's motion to dismiss was overruled on January 16, 1961. On March 23, 1961, oral depositions of the plaintiff and defendant were taken. Trial in the district court began on December 4, 1961. It is difficult to think that defendant, who was a brother of the plaintiff and who was farming with him in some operations, was subjected to any surprise as to the position of plaintiff. If there was any information defendant really needed in that particular he could have obtained the information by motion for more specific statement or by discovery deposition.

In his petition plaintiff alleged his freedom from contributory negligence. Alleging more than is necessary for recovery is not fatal to a litigant, but it is not realistic to assume that if plaintiff was basing his action on the rights of an employee he would make the unnecessary allegation that he was free from contributory negligence.

Almost any situation that could reasonably have been contemplated from a reading of the petition would have been sufficient to permit allegations of and admission of testimony to prove actionable negligence on the part of the defendant. Newton v. Grundy Center, supra, loc. cit. 920, says "A motion to dismiss is limited to the failure to state any claim on which *any* relief can be granted. Such motion is now almost as un-

necessary as the similar obsolete pleading of demurrer. [Citations] Other available proceedings for disposition of matters on their pleadings after answer virtually eliminate the need or use of the motion to dismiss for failure to state a claim."

The reason for this statement is unless it appears from the petition that there can be no recovery such a motion serves only to educate the pleader. In the instant case if defendant's motion to dismiss had been sustained plaintiff could have amended his petition to supply the claimed deficiency. Swartzendruber v. Polke, 205 Iowa 382, 386, 218 N.W. 62, and Neese v. Furry, 209 Iowa 854, 855, 227 N.W. 510.

38 Am. Jur., Negligence, section 259, says that it is not necessary for a plaintiff to aver specifically that the defendant owed a duty to the plaintiff or to allege in terms that it was the duty of defendant to do or not to do a particular thing when facts are alleged from which that duty appears, or from which the law will imply a duty. It is further said that an allegation that defendant carelessly and negligently did a certain act is equivalent, legally, to a statement that the defendant owed to the plaintiff a duty to exercise reasonable care. Windram Manufacturing Co. v. Boston Blacking Co., 239 Mass. 123, 124, 131 N.E. 454, 17 A. L. R. 669, 670, is cited. The cited case has this statement:

"The allegation that the defendant 'carelessly and negligently' manufactured and mixed the cement is equivalent legally to a statement that the defendant owed to the plaintiff a duty to exercise reasonable care in making the cement, and failed to perform that duty."

In the cited case the demurrer of defendant was sustained on other grounds.

The allegations of the petition indicate that plaintiff was on the premises in some legal status. As an invitee, employee or even as a licensee whose presence was known to defendant the plaintiff might have been injured under conditions constituting actionable negligence. If plaintiff was rightfully on the premises he was entitled to proceed with evidence showing his status and breach of duty by defendant.

The petition was vulnerable to a motion for more specific statement but not so fatally defective as to require dismissal.

We have just determined that plaintiff was entitled to show his status. It follows that defendant's objections to evidence relative thereto were properly overruled.

II. It is well settled that in considering the propriety of a directed verdict we give plaintiff's evidence the most favorable construction it will reasonably bear. Rule 344(f)2, Rules of Civil Procedure.

Viewed in its most favorable light plaintiff's evidence presented a case for the jury.

III. The plaintiff and defendant ordinarily helped each other when needed. Defendant invited plaintiff to "come on over" at the time and place involved. Defendant saw plaintiff and knew he was there. There was evidence to support plaintiff's position as an invitee.

We have recently reviewed the duties of an inviter to an invitee. See Atherton v. Hoenig's Grocery, 249 Iowa 50, 54, 86 N.W.2d 252; Chenoweth v. Flynn, 251 Iowa 11, 15, 99 N.W.2d 310; Anderson v. Younker Brothers, Inc., 249 Iowa 923, 927, 89 N.W.2d 858; Corrigan v. Younker Brothers, Inc., 252 Iowa 1169, 1174, 110 N.W.2d 246; Corkery v. Greenberg, 253 Iowa 846, 114 N.W.2d 327; and Christianson v. Kramer, 255 Iowa 239, 122 N.W.2d 283. The inviter's duty is to use reasonable care to keep the property in a reasonably safe condition for the contemplated use.

IV. Was defendant negligent in the manner of installation of the ventilators? We think a jury might so find.

Defendant testified that he received instruction for the assembling of the crib but "I just followed the directions when I wanted to." A jury might construe this statement as showing a disregard for approved methods. There was testimony by four experienced witnesses that defendant's method of installing the ventilators was not customary. This testimony was uncontroverted. The installation obviously lacked strength. A jury might find that installation of the horizontal tunnel without overlapping and the vertical tunnel without adequate support and stabilized only with binder twine showed lack of due care.

V. Did negligence, if any, incident to the installation of the tunnels continue until the corn was shelled several months later? Negligence is not excused by the fact that the result will be delayed. 38 Am. Jur., Negligence, section 55. When defendant tied the tunnel sections together with binder twine and then surrounded the tunnel with corn, he knew that the only time it could fall was when the corn was removed. He knew that in due course he would remove the corn. If there was negligence the result came at the only time it could happen. **The result was** within the limits of foreseeability.

As a farmer defendant knew that when the corn was shelled help would be needed in the crib. If defendant created a dangerous condition by faulty construction his responsibilities because thereof continued through the time he knew others would be exposed thereto. See Godbey v. Grinnell Electric & Heating Co., 190 Iowa 1068, 1074, 181 N.W. 498.

VI. Defendant knew how the ventilators were assembled. He did the assembling. As far as shown by the record he was the only one who knew how the vertical tunnel was put together or tied or on what it rested. He testified "I probably knew the horizontal tunnel was caved in." He testified that he did not tell plaintiff or anyone that the horizontal sections were not overlapped. The corn in the crib was higher than the top of the vertical tunnel. The top was not visible. Defendant's knowledge of conditions was superior to any other person.

It was defendant's duty to use reasonable care to have his premises reasonably safe for invitees; if not safe it was his duty to remedy the defect or danger, or to warn the invitee who in the exercise of reasonable care did not know of the defect or danger. Robinson v. Fort Dodge Limestone Co., 252 Iowa 270, 275, 106 N.W.2d 579, and cases cited.

VII. Defendant is not liable for injuries from dangers that are obvious, reasonably apparent or as well known to the person injured as they are to defendant. Atherton v. Hoenig's Grocery, supra. We have said in Division VI that defendant had superior knowledge of conditions surrounding the vertical tunnel. Were the dangers obvious or reasonably apparent to plaintiff? We cannot so hold as a matter of law.

Plaintiff had no previous experience with vertical vent tunnelling in a wire mesh crib. He did not know how the vent in defendant's crib was installed. He saw that the horizontal tunnel was crushed just enough to block the sheller drag. There was corn around the vertical tunnel. There is nothing in the record to indicate that the vertical tunnel was exposed or its instability apparent to plaintiff.

VIII. We cannot say as a matter of law that plaintiff was contributorially negligent. He was helping in a customary farm·operation. He attempted to remove an obstruction that increased the manual labor required. Plaintiff was not required as a matter of law to know that his efforts would cause the vertical ventilator to fall. It is not for the court to say that under the circumstances he disregarded a known or obvious danger. The result may indicate that his judgment was not good. Such a conclusion reached by hindsight, however, does not establish contributory negligence as a matter of law.

The burden of proof was on plaintiff to prove his case but generally questions of negligence, contributory negligence and proximate cause are for the jury. It is only in exceptional cases that they may be decided as matters of law. Rule 344(f)10, Rules of Civil Procedure.

IX. If negligence was established the question of proximate cause was a question of fact. The sheller drag was stuck in the tunnel because the tunnel was crushed. When an attempt to lift the obstructing section was made the vertical tunnel fell. The jury might conclude from the evidence that a proximate cause was the method of installing the horizontal or vertical tunnel or both.

X. Defendant argues vigorously that there was insufficient showing that plaintiff's back injury was caused by the falling ventilator. Defendant argues that plaintiff's injured back could have been caused by shoveling corn or lifting on the tunnel. The record does not indicate that plaintiff mentioned any injury to his doctors except to say that his pain developed while shoveling corn. On direct examination the doctors did not testify as to the cause of plaintiff's trouble. One of plaintiff's doctors admitted on cross-examination that a twisting, flexing,

jerking or lifting motion is a common cause of a herniated disc. We know of no law requiring plaintiff to exclude all other possible causes of a condition when there is direct evidence as to the actual cause. When there was other evidence, the failure of the doctors to give an opinion as to cause was not fatal. When plaintiff entered the crib he was free from disability according to the evidence. He suffered no trouble while shoveling. When the ventilator fell he was knocked down. He testified that the vertical tunnel came over and hit him. He said he knew an object other than corn hit him. He immediately suffered severe pain. His back was injured. The injury was later diagnosed as a herniated disc.

The showing of causal connection was sufficient.

XI. The trial court held plaintiff's showing of negligence and freedom from contributory negligence insufficient. Our study of the record leads us to the conclusion that reasonable minds could properly differ on whether defendant was negligent and plaintiff free from contributory negligence. If so, the questions were for the jury. Corkery v. Greenberg, supra, loc. cit. 851 of 253 Iowa.

The case is reversed and remanded for retrial.—Reversed and remanded.

GARFIELD, C. J., and HAYS, LARSON, THORNTON and MOORE, JJ., concur.

THOMPSON, PETERSON and STUART, JJ., dissent.

THOMPSON, J. (dissenting)—It is elementary that the burden is upon the plaintiff who seeks to recover damages for personal injuries claimed to have resulted from the negligence of the defendant, to make a prima facie showing sufficient to require submission to the jury. But if he does not make such a showing, the court should not hesitate to so hold. Although everyone will agree that the mere happening of an injury is not in itself sufficient to make a jury question, I fear we are approaching that result. We should not seek strained and implausible reasons for leaving the decision to the trier of the facts, nor should we ignore the record in order to accomplish this result.

With all due respect to the majority opinion, I suggest that is what it does in the case at bar. As the majority points out, the plaintiff did not see fit to say in his pleadings what status he occupied while assisting his brother in the corn shelling operation when he was injured; whether he was an employee, or agent, or joint adventurer, or invitee. However, the majority charitably, perhaps, says the record sufficiently shows he was an invitee, and reasons the case accordingly. This is also the status urged by the plaintiff in his brief in this court. Accepting this, arguendo, I think the trial court properly held that there was no sufficient showing of defendant's negligence to permit submission to the jury.

I. The majority properly states the rule governing the duty owed by the owner or occupier of premises to an invitee. He owes the duty of keeping his premises reasonably safe and free from dangers that are not obvious or which are not reasonably apparent, or which in the exercise of reasonable care for his own safety are not known to the invitee; and if such dangers exist it is his duty to warn of them. "The duty owed by the inviter is to those, and to those only, who do not know, or, in the exercise of reasonable care for their own safety, have no reasonable means of knowing, of defects or dangers." Atherton v. Hoenig's Grocery, 249 Iowa 50, 55, 86 N.W.2d 252, 255. We quoted this with approval in Corrigan v. Younker Bros., 252 Iowa 1169, 1175, 110 N.W.2d 246, 250.

At this point I part company with the majority. As the plaintiff performed his work of shovelling the corn into the dragline, he came to the place where the horizontal tunnel was blocked because it was crushed in from the top. The majority says: "He [the plaintiff] did not know how the vent in defendant's crib was installed." This statement is not supported by the record. It must be remembered that plaintiff's specifications of negligence, fairly interpreted, all go to the allegations that the horizontal tunnels should have been overlapped at the ends, and the vertical tunnel was improperly installed because it rested upon the horizontal tunnel. Presumably it is contended the vertical tunnel should have rested on the floor. There is no specification which by any fair reading can be construed to be an

allegation that the vertical tunnel should have been properly braced. The discussion as to binder twine is beyond the specifications of negligence, and amounts to reading into them something that is not there.

I turn then to the plaintiff's own testimony. It shows clearly that the whole situation was directly in front of him when he made his effort to raise the crushed mesh of the horizontal tunnel to permit the dragline to be pushed farther into it. He said: "My recollection is also that the column of vertical tunnels were [sic] sitting down solid on the crushed down bottom horizontal tunnel."

So the plaintiff knew that the vertical tunnel was rested on the horizontal tunnel; he so states. There is no showing that an overlapping of the ends of the sections of the horizontal tunnel would have prevented the crushing that resulted; but, in any event, the plaintiff had helped to remove at least one other section; he so testified. He must have seen that the ends there were not overlapped, and his testimony shows that he observed the place where the vertical tunnel sat on the horizontal tunnel, and if he could see that he could see that the horizontal tunnel was not overlapped.

The entire situation was before the plaintiff, and it does not require an expert to know that there is a danger from sliding or falling corn when it is being removed as was done here. The defects were as well known, or in the exercise of reasonable care should have been as well known, to the plaintiff as to the defendant. Indeed, the plaintiff, who was engaged in the work, in moving the corn which changed with each shovelful taken out, had better means of knowing of possible dangers than the defendant, who was not in the crib.

I would affirm the trial court.

PETERSON and STUART, JJ., join in this dissent.