19156

In the Matter of Holland SMITH, Respondent
(179 S. E. (2d) 35)

*Messrs. Daniel R. McLeod, Attorney General,* and *Irvin D. Parker, Assistant Attorney General,* of Columbia, *for Complainant.*

*William H. Grimball, Esq.,* of *Grimball & Cabaniss,* Charleston, *for Respondent,*

*Per Curiam:*

February 1, 1971.

After hearings pursuant to our Rule on Disciplinary Procedure, the Board of Commissioners on Grievances and Discipline filed with this court its final certified report finding the respondent guilty of professional misconduct growing out of forgery of a will, and recommending that he be permanently disbarred. The matter was argued before us in February 1970 on that report and the respondent's return to our order requiring him to show cause why the report of the Board should not be confirmed, and a disci-

plinary order be issued in accordance with said recommendation.

The respondent is a member of the Bar of South Carolina engaged in the practice of law in Hampton. The complainant is a member of the Board of Commissioners on Grievances and Discipline.

In the complaint it is alleged that the respondent committed acts of misconduct and engaged in practices which tend to pollute the administration of justice and bring the courts and the legal profession into disrepute. It is specifically alleged that respondent, Holland Smith, caused three persons to sign as witnesses to a purported Last Will and Testament of L. R. Wynn, knowing that the signature of L. R. Wynn was a forgery, and also knowing that this Will would be filed for probate in the Probate Court for Jasper County. It is also alleged that the respondent went with Jack Wynn and James Gilliard to the office of the Probate Judge for the purpose of offering the Will for probate.

The answer of the respondent admits the factual allegations of the complaint. There is no disagreement on the facts except in minor details. Respondent contends he had no intention of allowing the Will to be completed as the legal Will of L. R. Wynn, but that his intention was to enforce the discovery of the true Will of L. R. Wynn, which he believed was being withheld from probate. He asked that the complaint be dismissed.

Respondent was admitted to practice law in 1960. He is 37 years of age, married, and has three adopted children. He is apparently successful in the practice of law, and exhibits to the court a 1969 credit report indicating that he and his wife have a net worth of more than $188,000.

In argument before us respondent submits that a public reprimand should be administered in lieu of permanent disbarment. We are impressed, as was the hearing panel, with the fact that Mr. Smith admitted what he had done, giving his own reasons for his conduct.

Respondent's request for leniency is not without appeal. At the same time the Board of Commissioners has found that he "admitted with candor the charges set forth in the complaint, to-wit, that he had prepared the Will and procured certain signatures on that Will and assisted in admitting that Will to probate, knowing that it was a fraudulent instrument." The evidence well warrants the finding that the respondent did in fact commit acts of misconduct and did engage in practices which tend to pollute the administration of justice and bring the courts and the legal profession into disrepute.

The conclusion and recommendation that the respondent be permanently disbarred is fully warranted. The Board is composed of outstanding members of the bar of this State, selected by this court "to receive, entertain, inquire into, take proofs, make findings, and submit recommendations to this court * * *," While the recommendation of the Board of Commissioners is advisory only, it should and does carry much weight with this court, and should not be disregarded or modified without cogent reasons. We find nothing in the evidence that warrants the court's rejecting the recommendation. Our duty to the profession and to the public is plain. In State of South Carolina *ex rel. McLeod v. Belcher,* 249 S. C. 301, 153 S. E. (2d) 921 (1967), which also involved forgery by a member of the Bar, this court agreed with the Board that disbarment was commensurate with the conduct.

In *Cate v. Rivers,* 246 S. C. 35, 142 S. E. (2d) 369 (1965) this court disbarred the respondent for forgery in spite of the fact that the Board recommended a lesser punishment.

After the hearing before this court in February 1970, and while the court had arguments on the forgery charge under advisement, it came to our attention that an additional charge against the respondent had been filed with the Board of Commissioners on Grievances and Discipline. This charge

grew out of his failure to promptly remit $1,500 to his client, a Mrs. Eubanks of Florida.

By order filed August 24, 1970, this court directed the Board to pursue the additional charge. No additional formal hearing was held, but the respondent was given opportunity by this court to state his position and to submit an explanation. He filed a return and his affidavit of December 16, 1970.

Inasmuch as no formal hearing was held, we consider only his own verified admissions as relate to the sanctions to be imposed. In the light of the showing in the *Will* case, and in the light of the Board's recommendation of disbarment, we think no good purpose would be served by additional hearings on the new charge and the prolonged delays which would of necessity ensue.

According to respondent's own affidavit, on October 23, 1969 he received and deposited in his bank account the sum of $1,500 due his client, Mrs. Eubanks. On November 7, 1969 he mailed her his check for this amount. It was presented to respondent's bank for payment on November 20, 1969, at which time the account had a balance of $49.62. The check was returned to Mrs. Eubanks without payment. About December 8, 1969 the check was presented to the bank again. At this time there was on deposit $430.79; the check was again returned to Mrs. Eubanks without payment.

Mrs. Eubanks turned the matter over to her attorney, Mr. Green of Florida, for collection. In the early part of January 1970 Mr. Green phoned the respondent about the account. On January 5 the Attorney General for South Carolina wrote to the respondent concerning the collection. He then mailed a bank money order to Mrs. Eubanks in the amount of $1,500.

Respondent's explanation that at times between November 7 and December 8, 1969 his account was larger than $1,500, and that if the check had been presented on certain days it would have been honored, has little appeal. Mrs. Eubanks'

funds were commingled with his own and with those of other clients.

The Canons of Professional Ethics, as promulgated by the American Bar Association, were adopted as a rule of this court in 1956, and such Canons represent the consensus of the Bar on the standard that the lawyers in their practice should follow and uphold. These Canons prohibit an attorney from engaging in practices that bring the courts or the legal profession into disrepute. Canon No. 11 provides: "Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

The members of the court are not in full accord as to appropriate disciplinary action. However, all members share the view that the respondent is guilty of professional misconduct which tends to bring the courts and the legal profession into disrepute, and that such conduct warrants disciplinary action. A majority of the court has concluded that the recommendation of the Board should be honored and that the respondent should be disbarred.

It is, therefore, ordered that the respondent, Holland Smith, be, and he is hereby, disbarred from the practice of law in this State, and he shall within five days surrender to the Clerk of the Supreme Court the certificate heretofore issued by the court admitting him to practice.