Sandra K. **KOELLER**, Plaintiff-Appellee,

v.

James H. **REYNOLDS**,
Defendant-Appellant.

No. 83–87.

Court of Appeals of Iowa.

Dec. 27, 1983.

James W. Crawford and Elizabeth A. Brown of Crawford, Sullivan & Read, Cedar Rapids, for defendant-appellant.

John D. Stonebraker of McDonald, Stonebraker & Cepican, P.C., Davenport, for plaintiff-appellee.

Heard by OXBERGER, C.J., and SNELL and HAYDEN, JJ.

SNELL, Judge.

Plaintiff, Sandra Koeller, contracted polio as a child and has suffered from spinal curvature and related problems throughout her life. In 1972 and 1973 she underwent several surgical procedures designed to arrest and relieve her increasing deformity. These surgical procedures included bone grafts and the implantation of devices known as Harrington rods.

On December 31, 1973, Koeller was a passenger in a car which was involved in a low-speed collision. At the time of the accident, she was not aware of any pain or injury from the collision. However, during the next few weeks she felt increasing discomfort; an examination in late January disclosed, among other things, that one of the Harrington rods was broken and that a previously performed bone graft had failed. Koeller then underwent further surgery to address these problems.

Sometime during 1974, Koeller consulted the defendant, James Reynolds, an attorney, about the possibility of suing the driver of the other vehicle involved in the December 1973 collision. According to Reynolds, he alerted Koeller early in their discussions that it would be difficult to prove the accident had caused her subsequent

difficulties. However, Reynolds investigated the accident until he received a letter from Koeller's doctor expressing doubts that the accident had caused the breaking of the Harrington rod or the failure of the bone graft. At that time Reynolds concluded that Koeller's proposed lawsuit against the other driver lacked merit because it would be impossible to prove that the accident had proximately caused any of Koeller's later medical problems. Reynolds says he told Koeller in January 1975 that she had no case; Koeller denies this.

On December 31, 1975, the statute of limitation expired on Koeller's proposed lawsuit against the other driver. Koeller later filed the present legal malpractice action against Reynolds. Koeller alleged that Reynolds had been professionally negligent by failing to investigate or evaluate her claim properly, by failing to respond when the other driver's insuror suggested negotiations toward a settlement, by failing to file a petition within the statutory two-year limit, and by failing to inform Koeller about the existence and effect of the two-year statute of limitations. Koeller sought damages of $60,000.

The first division of Koeller's petition was tried to a jury, which returned a verdict in Koeller's favor for $21,500. Reynolds has appealed from the resulting judgment, contending the evidence was insufficient to support the verdict. He asserts Koeller failed to establish a prima facie case that she could have prevailed in a lawsuit against the other driver in the 1973 collision. He also asserts Koeller's evidence was insufficient to establish legal malpractice because she failed to produce any expert legal testimony on the applicable standard of care and because she failed to introduce evidence that any judgment in the underlying lawsuit would have been collectible.

■ Where a defendant claims evidence is insufficient to warrant a finding for the plaintiff in a malpractice case, an appellate court must view the testimony in the light most favorable to the plaintiff. *Bradshaw v. Iowa Methodist Hosp.*, 251 Iowa 375, 379, 101 N.W.2d 167, 169 (1960) (medical malpractice).

**I. Underlying action.** The Iowa Supreme Court has adopted the general principle that:

> ... a client who seeks to recover against his or her lawyer in a malpractice action based upon negligent handling of a lawsuit for money damages must not only prove negligence but must also prove that, absent the lawyer's negligence, the underlying suit would have been successful.

*Baker v. Beal*, 225 N.W.2d 106, 109 (Iowa 1975). Appellant Reynolds contends that appellee-plaintiff Koeller did not present a prima facie case showing that the underlying action in this malpractice action would have been successful.

A prima facie case is one which will suffice until contradicted and overcome by other evidence. It is a case which has proceeded upon sufficient proof to the stage where it will support a finding if evidence to the contrary is disregarded. Black's Law Dictionary (5th Ed.1979). *See Cronk v. Iowa Power and Light*, 258 Iowa 603, 613, 138 N.W.2d 843, 848 (1965). Koeller claimed that, had an action been brought against the driver of the other car involved in the 1973 accident, she would have been successful in proving that the accident caused aggravation to a preexisting condition of her spine and that this aggravation led her to require sugery to correct the resulting painful condition of her back.

Reynolds contends that Koeller had the burden to establish that any alleged injuries, aggravation to a preexisting condition or damages were proximately caused by the accident. Reynolds claims that, because Koeller failed to meet this burden, he was entitled to have his motion to dismiss granted and a verdict directed in his favor. We agree.

■ Koeller presented only three witnesses to prove her case: the defendant Reynolds, Koeller herself, and Koeller's mother. Only Koeller testified as to the

accident and as to whether she believed the accident caused her subsequent physical problems. She and her mother were her only witnesses regarding her preexisting back condition. Generally, a tort-feasor's liability is limited to compensation for injuries caused by his own acts of negligence, and not for injury or impaired health due to other causes. However, a tort-feasor whose act, superimposed upon an asymptomatic, latent condition, results in an injury may be liable in damages for the full disability. In these latter cases, the injury, not the dormant condition, is deemed to be the proximate cause of the pain and disability. *Becker v. D & E Distributing Co.,* 247 N.W.2d 727, 730–31 (Iowa 1976).

The Iowa Supreme Court has described "proximate cause" in the following language:

> "Proximate cause" is any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred .... "Proximate cause" is a primary moving cause or predominating cause from which the injury follows as a natural, direct and immediate consequence and without which it would not have occurred .... It is not necessary to a defendant's liability that the consequences of his negligence should have been foreseen, and it is sufficient if the injuries are the natural, though not necessary or inevitable, result of the wrong .... Negligence to be actionable must be the proximate cause of the injury.

*Chenoweth v. Flynn,* 251 Iowa 11, 16, 99 N.W.2d 310, 313 (1959).

■ We do not believe the evidence presented by the plaintiff was sufficient to allow a jury to determine that the car accident was the proximate cause of Koeller's subsequent back problems. The accident occurred several days before Koeller noticed any pain, although she claims she felt "achey and stiff" following the accident. Koeller testified as to her previous extensive operations and the nature of her back condition. But Koeller is not qualified as

an expert in diagnosing back conditions or in determining the probable cause of those conditions. In fact, her testimony indicates that she was not entirely certain of what the operations entailed or were meant to remedy.

The supreme court has found that expert testimony indicating probability or likelihood of a causal connection between a factual circumstance and a plaintiff's injury is necessary to generate a fact question. *Winter v. Honeggers' & Co.,* 215 N.W.2d 310, 323 (Iowa 1974). Further, in lieu of such probability testimony:

> when testimony of an expert witness that a described condition is merely "possible" or "might" exist as a consequence of a stated cause is coupled with other testimony, nonexpert in nature, that the described condition of which complaint is made did not exist before occurrence of those facts alleged to be the cause thereof, a fact question as to causal relation is generated.

*Id. See also, e.g., Becker v. D & E Distributing Co.,* at 730; *Rose v. John Deere Ottumwa Works,* 247 Iowa 900, 910–11, 76 N.W.2d 756, 761–62 (1956).

The insufficiency of the plaintiff's evidence may be discerned by examining it in juxtaposition to the following language:

> It is a rule too well established to require the citation of authority, that the question of proximate cause is generally for the jury to determine, although the line of demarcation between what is sufficiently proximate and what is too remote is often a thin one. If upon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable, and improbable in the light of common experience, such negligence would be a remote rather than a proximate cause. If, however, by a fair consideration of the facts based upon common human experience and logic, there is nothing particularly unnatural or unreasonable in connecting the injury with the negligence, a jury question would be created. In the instant case, *taking plaintiff's testimony together*

*with the expert testimony,* light though it may be, there is certainly nothing unreasonable or unnatural, based upon human experience and common sense, in connecting the negligence with the injury. We think a jury question was created thereby.

*Chenoweth v. Flynn,* 251 Iowa 11 at 17–18, 99 N.W.2d at 314 (emphasis added). In the case at bar, the plaintiff did not present any expert testimony that the type of car accident involved would be an adequate cause of the subsequent injuries. Without expert testimony regarding her back condition both before and after the accident, and considering the intervening days between the accident and the onset of back pain, the injury "appears unnatural, unreasonable, and improbable in the light of common experience." *See id.* Koeller admitted that she experienced pain from time to time before the accident. Thus, this was not the case of a latent condition manifesting itself only after the accident. Without expert testimony, any determination of proximate cause under the circumstances in this case would be mere speculation by a jury.

■ Koeller argues that a letter from her surgeon, Dr. John Moe, which was admitted into evidence for limited purposes, contains expert opinion evidence supporting her theory that the accident caused her injury. In the letter, Dr. Moe stated:

> I think you will note from the above information that I have given you that she did have a pseudoarthrosis prior to this auto accident and about all that I can say is that certainly an auto accident in the presence of a pseudoarthrosis is no good for the spine. This is the kind of a case that I think should be settled on the basis that there was somewhat of an aggravation but that the need for the last operation was not due to the auto accident but was due to the pseudoarthrosis which was previously noted.

This expert opinion, she contends, combined with her own testimony, presents a fact question as to causal relation. The letter was admitted for limited purposes; the jury was instructed that it should not consider the letter for the truth of the matters asserted therein. The trial court properly determined that, because of their hearsay nature, the contents of the letter could not be considered by the jury until Koeller had presented a prima facie case. Koeller did not succeed in presenting such a case.

■ Koeller argues that Reynolds waived formal introduction of the contents of the letter by referring to the contents in his opening statement. This argument is without merit. It was predictable that Reynolds would refer to the letter in his opening statement. This does not constitute waiving a hearsay objection to its contents. The trial court correctly omitted the contents of the letter from the jury's consideration in the underlying action.

**II. Malpractice action.** Reynolds also asserts on appeal that Koeller failed to present a prima facie case of legal malpractice because: (1) she presented no expert testimony regarding the prevailing legal standards so that the jury could compare Reynolds' performance to the standards and determine whether the performance was within the range of normal attorney competency; and (2) Koeller failed to produce any competent evidence that, if a judgment could have been obtained in the underlying case, it would have been collectible.

The Iowa Supreme Court has stated:

> Legal malpractice consists of the failure of an attorney "to use such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 180, 491 P.2d 421, 422–23, 98 Cal.Rptr. 837, 838–39 (1971). "When such failure proximately causes damage it gives rise to an action in tort." *Id.* at 180–81, 491 P.2d at 423, 98 Cal. Rptr. at 839.

*Millwright v. Romer,* 322 N.W.2d 30, 32 (Iowa 1982) (footnote omitted). "[E]veryone is presumed to have discharged his duty, whether legal or moral, until the con-

trary is made to appear." *Baker v. Beal,* 225 N.W.2d 106, 110 (Iowa 1975) (*citing Dorf v. Relles,* 355 F.2d 488, 492 (7th Cir. 1966)). Reynolds claims his testimony demonstrated that his decision against filing suit in Koeller's case was a professional judgment, and that "[i]t is the generally accepted rule that mere errors in judgment by a lawyer are not grounds for negligence, at least where the lawyer acts in good faith and exercises a reasonable degree of care, skill and diligence." *Baker v. Beal,* at 112. He argues that if he made any error in judgment, his actions were not negligent because the evidence indicates he exercised a reasonable degree of care and, thus, where possible valid considerations exist for an attorney's decision, Koeller was required to produce expert testimony to establish Reynolds' negligence. *See* Annot. 17 A.L.R.3d 1442 § 3 (1968 & Supp. Aug. 1983 at 301).

Koeller counters Reynolds' arguments by pointing out that:

> Courts generally recognize some malpractice cases may present situations in which the proof is so clear and obvious that a trial court could, with propriety, rule as a matter of law whether the lawyer met applicable standards....
>
> Other cases may arise in which the asserted shortcomings of the lawyer are so plain they may be recognized or inferred from the common knowledge or experience of laymen.

*Baker v. Beal,* at 112. Koeller contends that Reynolds' failure to take any action in filing suit before the statute of limitations had run and failure to inform Koeller of the two-year limit were plain shortcomings which would be obvious to laymen. Therefore, Koeller submits, the jury was able to determine Reynolds' negligence without expert testimony.

▪ Koeller's argument begs the question of negligence by assuming she had a good case. Section 610.14(2) of the Iowa Code charges attorneys with the duty to "counsel or maintain no other actions, proceedings, or defenses than those which appear to him legal and just ...." Reynolds

testified that he did not believe that maintaining an action in Koeller's case would be just. Consequently, we do not have a situation where malpractice is clear and obvious or where the lawyer's shortcomings would be plain to laymen without the testimony of those trained in the profession. We find that it was necessary for Koeller to present expert testimony regarding the applicable standard of care for an attorney in this type of case.

▪ In regard to the issue of collectibility, we find the following language dispositive:

> In a legal malpractice action, the general measure of damages is "the amount of loss actually sustained as a proximate result of the conduct of the attorney." 7A C.J.S. *Attorney & Client* § 273a (1980); *see* 7 Am.Jur.2d *Attorneys at Law* § 226 (1980).... As the general measure is the loss "actually sustained," when the loss arises from negligently *prosecuting* a prior case the client has the burden of proving not only the amount of the judgment he would have *obtained* but for the negligence, but also what he would have *collected.* If the solvency of the prior defendant is known beyond question—for example, a tort claim against the state or an insurance claim within policy limits—a court may hold without other proof that the entire judgment would have been collectible. But if the prior defendant was an individual or other entity whose solvency is not known beyond question, the client *must introduce substantial evidence* from which a jury could reasonably find that a prior judgment would have been collectible in full, or could reasonably find the portion of the judgment which would have been collectible. In malpractice cases of this sort the client is limited in any event to the amount which could have been collectible.

*Pickens, Barnes & Abernathy v. Heasley,* 328 N.W.2d 524, 525–26 (Iowa 1983) (emphasis original and added).

▪ Koeller did not present substantial evidence of the solvency or collectibility of

a judgment against the defendant in the underlying case. She argues that, because letters from the insurance company of the defendant in the underlying case were admitted into evidence, the jury could have inferred that any judgment would be collectible. This argument is without merit. Because a judgment is limited to the amount which could have been collectible, it would have been necessary for Koeller to provide evidence of the exact limits of any insurance policy or that a judgment was collectible from the negligent driver defendant.

Koeller urges us to adopt the rule in *Wagner v. Tucker*, 517 F.Supp. 1248, 1252 (S.D.N.Y.1981), in which the New York court held that where the issue of collectibility is not raised by the defendant, no responsibility attaches to the plaintiff to prove collectibility. On this point, the Iowa law as set out in the *Pickens* case is determinative.

REVERSED.