**CIANBRO CORPORATION, Plaintiff,**

v.

**JEFFCOAT AND MARTIN, a South Carolina general partnership; Otis Allen Jeffcoat, III; G. Michael Smith; Lumpkin & Sherrill, a South Carolina general partnership; Alva M. Lumpkin; Henry F. Sherrill; William H. Townsend; C. Joseph Roof; Albert L. Moses; and Carl L. Holloway, Jr., Defendants.**

Civ. A. No. 3:91–376–19.

United States District Court,
D. South Carolina,
Columbia Division.

Oct. 8, 1992.

W. Thomas Vernon, Law Offices of King & Vernon, P.A., Columbia, S.C., for plaintiff.

James W. Alford and Curtis W. Dowling, of Barnes, Alford, Stork & Johnson, Columbia, S.C., for defendants Jeffcoat and Martin and Otis Allen Jeffcoat, III.

Wilburn Brewer, Jr., of Nexsen, Pruet, Jacobs & Pollard, Columbia, S.C., for defendants G. Michael Smith, Lumpkin & Sherrill, Alva M. Lumpkin, Henry F. Sherrill, William H. Townsend, C. Joseph Roof, Albert L. Moses and Carl L. Holloway, Jr.

## MEMORANDUM OPINION AND ORDER

SHEDD, District Judge.

In this legal malpractice action, Cianbro Corporation ("Cianbro") contends that defendant Otis Allen Jeffcoat ("Jeffcoat") negligently failed to commence suit to foreclose a mechanic's lien in a timely fashion, thereby rendering the mechanic's lien invalid. Cianbro seeks to hold the other defendants vicariously liable for Jeffcoat's alleged negligence based on their partnership with Jeffcoat. This matter came before the Court on motions by all parties for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and, on August 14, 1992, the Court conducted oral arguments on these motions.[1] After carefully reviewing the record and the controlling legal principles, the Court concludes that Cianbro has failed as a matter of law to establish that Jeffcoat was negligent. Accordingly, the Court will enter summary judgment in favor of defendants.

---

1. The Court announced its tentative decision at the hearing. This Opinion and Order now serve to memorialize the Court's ruling.

## I

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Fed. R.Civ.P.* 56(c). Summary judgment is not "a disfavored procedural shortcut, but rather [it is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting *Fed.R.Civ.P.* 1). When the moving party properly supports its motion showing that it is entitled to judgment as a matter of law, the party opposing the motion must present "affirmative evidence" to establish a genuine dispute of material fact which is necessary to defeat the summary judgment motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257–58, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the Court is required to view any permissible inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. *Moore v. Winebrenner,* 927 F.2d 1312, 1313 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). If, after viewing the evidence in the light most favorable to the non-moving party, the Court finds that the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial, the Court must grant summary judgment against that party. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990).

## II

The material facts in this case are not in dispute. In March 1983, Cianbro, a Maine corporation, contracted with Royal Garden Resort ("Royal Garden") to serve as the construction contractor for a condominium development in Garden City (Horry County), South Carolina. The contract price was $10,500,000. At the same time, Royal Garden contracted with Preferred Savings and Loan Association ("Preferred"), to provide the financing for the project, the amount of which was $13,500,000. Preferred held a first mortgage on the development property in this amount as security for the construction loan. Cianbro substantially completed construction by June 1984 and, on June 11, 1984, the building received a Certificate of Occupancy by an Horry County Building Official.

By June 1984, closings of individual residential condominium units in the project were occurring. In order to assist in the closings of sales of the units at Royal Garden, Michael Meeker, a Greensboro, North Carolina attorney, who was counsel for Cianbro, hired Jeffcoat to act as Cianbro's local counsel in South Carolina and to assist in the transfer of title of the units as they were sold. At that time, Royal Garden was facing financial difficulties and was in default under the terms of both the construction contract and its construction loan with Preferred. Because Cianbro was concerned about protecting its interest in the project, it asked Jeffcoat to file a mechanic's lien on the property on its behalf. Jeffcoat, who was then a partner in the firm of defendant Lumpkin and Sherrill, filed notice of Cianbro's mechanic's lien on August 13, 1984, stating an indebtedness of $777,794.74. Jeffcoat amended and refiled the mechanic's lien on September 18, 1984, stating an indebtedness of $639,-250.39.

Cianbro completed all construction on the project in November 1984. Until the spring of 1985, Cianbro worked with Preferred in order to negotiate an arrangement for payment from the sales of units at Royal Garden. Sometime after Jeffcoat filed the amended mechanic's lien in September 1984, Jeffcoat and Meeker discussed filing an action to enforce the mechanic's lien. However, no action was taken in this regard until April 2, 1985, when Jeffcoat filed a lis pendens, summons, and petition to foreclose the mechanic's lien. At the time that Jeffcoat filed these pleadings, both he and Mr. Meeker believed the filing to be timely under the applicable statute of limitations. On June 18, 1985,

Preferred commenced a mortgage foreclosure action. The two cases, which were both pending in the Court of Common Pleas for Horry County, were consolidated for the purposes of trial.

In December 1985, Preferred moved for summary judgment against Royal Garden in the mortgage foreclosure action, seeking judgment for the amount due under the terms of the note and mortgage on the development property. Preferred also sought a deficiency judgment against Royal Garden and certain individual guarantors. On January 10, 1986, then Circuit Judge (now United States District Judge) William B. Traxler, Jr., granted summary judgment in favor of Preferred. Pursuant to Judge Traxler's Order, which specifically stated that the sale of the property was not to be delayed by any determination of the priorities of the various lien holders, the development property was sold at public auction on March 3, 1986. Preferred bid the appraised value of the property and was the highest bidder. With regard to the foreclosure and mechanic's lien actions, Judge Traxler referred these matters to the Master-in-Equity for Horry County, Judge John L. Breeden. During the proceedings before Judge Breeden, Preferred moved for summary judgment against Cianbro on the grounds that Cianbro had not properly complied with the South Carolina Mechanic's Lien Statutes and, as a result, Cianbro's mechanic's lien should be dissolved.

In a report filed on June 20, 1986, Judge Breeden granted Preferred's motion for summary judgment and ruled that Cianbro's mechanic's lien was dissolved. Judge Breeden based this ruling on Cianbro's failure to comply with the provisions of S.C.Code Ann. § 29–5–90, which mandates service and filing of a certificate of lien,

and S.C.Code Ann. § 29–5–120, which contains the limitations period for commencing suit to foreclose a mechanic's lien.[2] Judge Breeden concluded that Cianbro failed to foreclose the mechanic's lien in a timely fashion it filed the mechanic's lien in September 1984, but did not file the foreclosure action until April 1985, more than six months later. Judge Breeden interpreted Sections 29–5–90 and 29–5–120 as requiring the party asserting the lien to commence a foreclosure action within six months after the lien is filed notwithstanding the fact that Section 29–5–120 specifically states that the action must be filed "within six months after the person desiring to avail himself [of the lien] *ceases to labor*" on the particular construction project (emphasis added).

Cianbro appealed Judge Breeden's determination to the Circuit Court. On October 9, 1986, Circuit Judge Owens T. Cobb, Jr., overruled Judge Breeden's Order, concluding that Cianbro's lien was valid. Judge Cobb held that Cianbro complied with the provisions of Sections 29–5–90 and 29–5–120 because it ceased work on the project in November 1984 and, as noted, filed the foreclosure action in April 1985, within the six-month period. Judge Cobb interpreted these sections as requiring the party asserting the lien to commence the foreclosure action within six months after ceasing labor rather than within six months after filing the lien.

Preferred thereafter appealed Judge Cobb's Order to the Court of Appeals for South Carolina, which agreed with Judge Breeden and reversed Judge Cobb's decision, holding that Cianbro's mechanic's lien was dissolved as a result of its failure to timely institute the foreclosure suit. *Preferred Sav. and Loan Ass'n, Inc. v. Royal*

2. S.C.Code Ann. § 29–5–90 provides in pertinent part:

Such a lien shall be dissolved unless the person desiring to avail himself thereof, within ninety days after he ceases to labor on or furnish labor or materials for such building or structure, serves upon the owner ... a statement of a just and true account of the amount due him, with all just credits given ... which certificate ... shall be recorded in

a book kept for the purpose by the register or clerk....

S.C.Code Ann. § 29–5–120 provides:

Unless a suit for enforcing the lien is commenced, and notice of pendency of the action is filed, within six months after the person desiring to avail himself thereof ceases to labor on or furnish labor or material for such building or structures, the lien shall be dissolved.

*Garden Resort, Inc.,* 295 S.C. 268, 368 S.E.2d 78 (Ct.App.1988). The Supreme Court of South Carolina granted Cianbro's petition for writ of certiorari and subsequently affirmed the decision of the court of appeals. *Preferred Sav. and Loan Ass'n, Inc. v. Royal Garden Resort, Inc.,* 301 S.C. 1, 389 S.E.2d 853 (1990). The supreme court, construing Sections 29–5–90 and 29–5–120 together, held:

> The effect of these provisions is that the six month limitations period for enforcing the lien necessarily commences no later than the date the certificate of lien is filed. If suit is not commenced within six months after the date of filing, title examiners may assume that the mechanic's lien is dissolved.

389 S.E.2d at 855. As a result of the supreme court's decision, Cianbro's lien was dissolved.

In a strong dissent, Justice Toal argued that "there is no question but that Cianbro complied with [Sections 29–5–90 and 29–5–120]" and concluded that Cianbro was therefore entitled to foreclose its lien. 389 S.E.2d at 855–57. Justice Toal rejected the court of appeals' and majority's interpretation that foreclosure must be commenced within six months after the lien is filed, stating that "[w]hat the Court of Appeals and majority are really doing is reading something into [Section 29–5–120] that simply is not there." 389 S.E.2d at 856.[3]

Cianbro thereafter filed this action contending that Jeffcoat was negligent in not filing the foreclosure action within six months after he filed the mechanic's lien.

Cianbro argues at summary judgment that the undisputed facts establish that Jeffcoat failed to file the foreclosure action in a timely fashion and, as an attorney, he should have been aware of the statutory limitations period for commencing a lawsuit to perfect the lien, which Cianbro contends was a clear issue. Cianbro argues alternatively that even if the law concerning the limitations period was uncertain prior to the supreme court's decision in *Preferred Savings and Loan Association,* Jeffcoat was negligent because he failed to recognize and to inform it of the uncertain nature of the law and to file the mechanics' lien action at the earliest date under the possible interpretations of the statutes.[4]

Defendants concede that Jeffcoat's interpretation of Sections 29–5–90 and 29–5–120 is incorrect in light of the supreme court's ruling in *Preferred Savings and Loan Association.* However, they argue, among other things, that as a matter of law Jeffcoat cannot be found negligent because the law relating to the limitations period was unclear at the time he filed the action and he merely made a good-faith legal judgment in interpreting those sections. While defendants did not brief the issue of whether Cianbro was required to present expert testimony to establish its case, they did raise this issue at oral argument.[5]

### III

"A litigant who enters the judicial process through the agency of freely chosen counsel always assumes a certain risk

---

3. Mr. Meeker agreed with Jeffcoat's interpretation of the statute of limitations. Following the supreme court's decision in *Preferred Savings and Loan Association,* Mr. Meeker wrote a letter to plaintiff stating that "[a] decision this wrong could only be rendered in South Carolina."

4. Cianbro seeks to hold the other defendants vicariously liable through their partnership relations with Jeffcoat. *See* S.C.Code Ann. § 33–41–350. When plaintiff hired Jeffcoat, he was a partner at Lumpkin and Sherrill, a South Carolina law firm. In September 1985, Jeffcoat left Lumpkin and Sherrill to form his own law firm, Jeffcoat and Martin. Jeffcoat took Cianbro's file with him when he left Lumpkin and Sherrill. Smith, who was an associate at Lumpkin and Sherrill when plaintiff hired Jeffcoat, left

Lumpkin and Sherrill with Jeffcoat and became an associate with Jeffcoat and Martin. Smith became a partner with Jeffcoat and Martin in April 1987.

5. *See, e.g., Hodges v. Carter,* 239 N.C. 517, 80 S.E.2d 144, 146 (1954) (attorney "who acts in good faith and in honest belief that his advice and acts are well-founded and in the best interest of his client is not answerable for a mere error of judgment or for a mistake in a point of law which has not been settled by the court of last resort in his State and on which reasonable doubt may be entertained by well-informed lawyers"); *but see Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989) ("[t]here is no subjective good faith excuse for attorney negligence").

that the result achieved will not be satisfactory." *Petty v. Timken Corp.,* 849 F.2d 130, 133 (4th Cir.1988). The law does not require that an attorney be infallible and simply because an attorney has made a mistake does not establish negligence or malpractice as a matter of law. *Myers v. Beem,* 712 P.2d 1092, 1094 (Colo.Ct.App. 1985); *cf. Hook v. Rothstein,* 281 S.C. 541, 316 S.E.2d 690, 701 & n. 3 (Ct.App.), *cert. denied,* 283 S.C. 64, 320 S.E.2d 35 (1984) (affirming medical malpractice jury instruction which stated that a doctor "does not guarantee or insure the correctness or safety of his treatment" and "is not liable for an error or mistake in judgment if he applies ordinary and reasonable skill and care"). However, when an attorney's negligence or dereliction of duty prejudices a client's rights or position, the attorney must be held accountable for his or her conduct. In recognition of this fact, a cause of action for legal malpractice exists in South Carolina. *See generally* 1 S.C. Juris. *Attorney and Client* §§ 56–84 (1991).

■ In order to prevail on a claim of legal malpractice, the plaintiff must prove that the attorney was negligent and that this negligence was the proximate cause of injury to the plaintiff. *Shealy v. Walters,* 273 S.C. 330, 256 S.E.2d 739, 742 (1979); *Maryland Cas. Co. v. Price,* 231 F. 397, 401 (4th Cir.1916). Proof of negligence requires the plaintiff to establish both the existence of a legal duty of care on the part of the attorney to protect the plaintiff and the attorney's failure to discharge that duty, as well as proximate cause. *South Carolina State Ports Auth. v. Booz–Allen & Hamilton, Inc.,* 289 S.C. 373, 346 S.E.2d 324, 325 (1986) (general elements of negligence). The plaintiff's failure to prove any one of these elements renders its cause of action insufficient. *Frist v. Leatherwood, Walker, Todd & Mann,* 433 F.2d 11 (4th Cir.1970); *South Carolina State Ports Auth.,* 346 S.E.2d at 325.

### A.

As the undisputed facts of this case establish, there is no question but that Jeffcoat fully complied with the plain language of Section 29–5–120 in filing the foreclosure action. However, it is clear that Jeffcoat's interpretation of Section 29–5–120 is incorrect in light of the subsequent supreme court decision and, as the law now stands, he failed to file the foreclosure action in a timely manner, thereby causing the mechanic's lien to be dissolved. It is equally clear, however, that prior to the courts' decisions in *Preferred Savings and Loan Association,* there was no reported judicial interpretation of when a foreclosure suit needed to be filed under Section 29–5–120, and there was no indication that the plain language of Section 29–5–120 was not to be followed. Moreover, there is no evidence in the record that Jeffcoat acted other than in complete good faith in his efforts on behalf of Cianbro.

As a general proposition, "[a] legal malpractice action is unlikely to succeed when the attorney erred because an issue of law was unsettled or debatable. The perfect vision and wisdom of hindsight is an unreliable test for determining the past existence of legal malpractice." R. Mallen, *Recognizing And Defining Legal Malpractice,* 30 S.C.L.Rev. 203, 210 (1979). In this case, Jeffcoat's error in not filing the foreclosure action in a timely manner can very likely be excused under this general rule since, as the procedural history and dissenting opinion of the *Preferred Savings and Loan Association* case show, the question of when an action had to be filed under Section 29–5–120 was legitimately a debatable point of law at the time that Jeffcoat filed the action.[6] Even terming this issue as now being debatable is somewhat misleading since there is no evidence in the record to suggest that at the time that Jeffcoat filed the foreclosure action there was any reason to believe that Section 29–5–120 meant anything other than exactly what the statutory language plainly stated.

---

**6.** The South Carolina Law Review recently noted that in *Preferred Savings and Loan Association,* the supreme court "clarified the requirements for perfecting and enforcing mechanics liens." Survey, *Commercial Law,* 43 S.C.L.Rev. 24 (1991).

Under these circumstances, a strong case can be made by Jeffcoat for the proposition that as a matter of law he cannot be held liable because he merely followed the plain and unambiguous terms of Section 29–5–120. Although this proposition has apparently never been addressed by the South Carolina appellate courts, it only seems logical and just that an attorney cannot be held liable for following the plain terms of a statute when there are not compelling circumstances to suggest that the attorney should have acted other than in conformity with the statute.[7] This principle of law appears to the Court to be sound and, if applicable, would establish a complete defense to Cianbro's claims. However, it is not necessary for the Court in this case to predict whether the Supreme Court of South Carolina would adopt this legal principle because, as set forth below, the Court finds that Cianbro has failed to meet its burden of establishing a material issue of fact with respect to the applicable standard of care, which is an essential element of its negligence case.[8] Therefore, because Cianbro has failed to satisfy its summary judgment burden of proof, defendants are entitled to summary judgment without having to establish this defense.

**B.**

■ Generally, "[t]he duty of care is that standard of conduct the law requires of an actor in order to protect others against the risk of harm from his actions. It embodies the principle that the plaintiff should not be called to suffer a harm to his person or property which is foreseeable and which can be avoided by the defendant's exercise of reasonable care." *Snow v. City of Columbia*, 305 S.C. 544, 409 S.E.2d 797, 803 (Ct.App.1991). In a professional malpractice case, the burden of proof with respect to the standard of care is on the plaintiff, *Kemmerlin v. Wingate*, 274 S.C. 62, 261 S.E.2d 50, 51 (1979); and "the standard of care that the plaintiff must prove is that the professional failed to conform to the generally recognized and accepted practices in his profession." *Doe v. American Red Cross Blood Servs., S.C. Region*, 297 S.C. 430, 377 S.E.2d 323, 326 (1989). The South Carolina Supreme Court has set forth a general standard of care an attorney owes to his or her clients:

> An attorney, who contracts to prosecute an action on behalf of his client, impliedly represents that he possesses the requisite degree of learning, skill, and ability, which is necessary to the practice of his profession; that he will exert his best judgment in the prosecution of the litigation entrusted to him; and that he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to the cause of his client.

*Norris v. Alexander*, 246 S.C. 14, 142 S.E.2d 214, 217 (1965).[9]

■ This general standard of care is not, however, particularly helpful in assessing specific instances of alleged malpractice. Therefore, as in other professional malpractice actions, the plaintiff in a legal malpractice action ordinarily must establish

---

7. This principle would seem to apply not only to attorneys, but to all persons who follow the clear dictate of a statute.

8. Although where "the state law is not settled, it is the function of the federal courts in [a] diversity suit to determine what the South Carolina Supreme Court would likely decide if presented with the identical issue," *Louthian v. State Farm Mut. Ins. Co.*, 493 F.2d 240, 242 (4th Cir.1973); in a case such as this one, where an independent basis for resolving the controversy exists, federal courts should refrain from unnecessarily attempting to formulate state law.

9. Rule 1.1 of the South Carolina Rules of Professional Conduct states in pertinent part: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *S.C.App.Ct.R.* 407. Although the South Carolina Supreme Court has stated that the rules of professional ethics, such as Rule 1.1, which it has adopted for persons admitted to practice law in this state "represent the consensus of the Bar on the standard that the lawyers in their practice should follow and uphold," *In re Smith*, 255 S.C. 347, 179 S.E.2d 35, 37 (1971); these rules are "designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies ... [and are] not designed to be a basis for civil liability." *S.C.App.Ct.R.* 407 Preamble.

by expert testimony the specific duty of care required of the attorney and the breach thereof, *Mali v. Odom*, 295 S.C. 78, 367 S.E.2d 166, 168 (Ct.App.1988); and ordinarily " 'there can be no finding of negligence in the absence of expert testimony to support it.' " *Gilliland v. Elmwood Properties*, 301 S.C. 295, 391 S.E.2d 577, 580 (1990) (citation omitted). Expert testimony is required in most legal malpractice cases because "the jury cannot rationally apply a general statement of the standard of care unless it is aware of what the competent lawyer would have done under similar circumstances." *Berman v. Rubin*, 138 Ga. App. 849, 227 S.E.2d 802, 806 (1976). "Juries must be informed of the criteria upon which a defendant's conduct is to be judged." *Kemmerlin*, 261 S.E.2d at 51.

Expert testimony concerning the standard of care is not required, however, in professional malpractice cases where the negligence is so obvious as to be "within the ambit of common knowledge and experience, so that no special learning is needed to evaluate the conduct of the defendant." *Pederson v. Gould*, 288 S.C. 141, 341 S.E.2d 633, 634 (1986) (medical malpractice). This "common knowledge" exception applies in legal malpractice cases. *Mali*, 367 S.E.2d at 168. As the First Circuit has stated: "Sometimes an attorney is so grossly ineffective that his lack of professionalism is plain to see. Even the untutored eye can discern blundering of an egregious and uncomplicated sort." *Wagenmann v. Adams*, 829 F.2d 196, 220 (1st Cir.1987). The application of the common knowledge exception in proving negligence depends upon the facts of the particular case and when the doctrine is applicable, "the plaintiff must offer evidence that arises above mere speculation or conjecture." *Hickman v. Sexton Dental Clinic, P.A.*, 295 S.C. 164, 367 S.E.2d 453, 455 (Ct.App.1988).

Cianbro has not presented any expert testimony in support of its motion for summary judgment or in opposition to defendants' motions for summary judgment but, instead, apparently relies on the common knowledge exception based on the general rule that the failure of an attorney to commence an action within the time of the statute is considered negligence, *Fuschetti v. Bierman*, 128 N.J.Super. 290, 319 A.2d 781, 784 (1974); and expert testimony is not required to establish the standard of care on that point:

> It does not require expert testimony to establish the negligence of an attorney who is ignorant of the applicable statute of limitations or who sits idly by and causes the client to lose the value of his claim for relief. An attorney who delays the bringing of an action until the statute of limitation has run is guilty of negligence if the attorney did not act solely with a view to promote the interest of his client.

*George v. Caton*, 93 N.M. 370, 600 P.2d 822, 829 (Ct.App.), *cert. quashed*, 93 N.M. 172, 598 P.2d 215 (1979).

Despite this general rule, not every allegation of legal malpractice involving an attorney's failure to comply with a statute of limitations constitutes conduct which a jury could readily recognize as negligence without expert testimony. For example, in *Koeller v. Reynolds*, 344 N.W.2d 556 (Iowa Ct.App.1983), the plaintiff argued that she did not need to present expert testimony to establish that her attorney's failure to file suit before the limitations period had run was negligence because this was a "plain shortcoming" which was "obvious to laymen." 344 N.W.2d at 561. The court disagreed:

> Section 610.14(2) of the Iowa Code charges attorneys with the duty to "counsel or maintain no other actions, proceedings, or defenses than those which appear to him legal and just...." [The attorney] testified that he did not believe that maintaining an action in [the plaintiff's] case would be just. Consequently, we do not have a situation where malpractice is clear and obvious or where the lawyer's shortcomings would be plain to laymen without the testimony of those trained in the profession. We find that it was necessary for [the plaintiff] to present expert testimony regarding the applicable standard of care for an attorney in this type of case.

344 N.W.2d at 561. Similarly, in *Sheets v. Letnes, Marshall & Fiedler, Ltd.*, 311 N.W.2d 175 (N.D.1981), the plaintiff in a legal malpractice action moved for summary judgment arguing that her attorney had overlooked a statute of limitations and that this fact established malpractice as a matter of law. In support of her motion, the plaintiff asserted that if her attorney had conducted "a minimum of research" he would have learned that the relevant statute of limitations "may" have applied in her case. 311 N.W.2d at 180–81. Although the court in *Sheets* did not squarely address the issue of whether expert testimony was necessary in that case,[10] it denied the plaintiff's motion for summary judgment, stating:

> An attorney may well be negligent as a matter of law in overlooking a statute of limitations if the applicability of that statute is well settled in the law. However, in this case there are additional factors to be considered besides the failure to commence the action within the two-year statute of limitations. Prior to this Court's ruling in *Sheets v. Graco, Inc.*, [292 N.W.2d 63 (N.D.1980)] ... the applicable statute of limitations for a wrongful death action was not settled in North Dakota. The degree of uncertainty as to the applicable statute of limitations coupled with the requirement that an attorney exercise the degree of skill and care ordinarily exercised by attorneys under similar circumstances requires a factual determination to ascertain whether or not there was a violation of that standard of care.

311 N.W.2d at 181.

### C.

■ In light of the foregoing authorities, the Court concludes that Cianbro is required to present expert testimony concerning the standard of care in order to establish that Jeffcoat's failure to comply with the statute of limitations was negligent. Cianbro's reliance on the common knowledge exception is misplaced because this case does not present the situation referred to above in which an attorney has failed to file an action within the limitations period due to ignorance of or indifference to the statute of limitations. To the contrary, Jeffcoat was not only cognizant of the statute of limitations set forth in Section 29–5–120, but he also complied with the plain and unambiguous terms of that statute. This compliance is the best evidence of the exercise of care, *see Foreman v. Atlantic Land Corp.*, 271 S.C. 130, 245 S.E.2d 609, 610 (1978); and there is no evidence to indicate that he should have acted differently.

Moreover, although Cianbro characterizes the issue as being a straightforward matter of erroneous statutory interpretation by Jeffcoat, the procedural history of the foreclosure litigation clearly indicates otherwise. As noted, Judge Cobb agreed with Jeffcoat's interpretation of the limitations period. More importantly, Justice Toal strongly dissented from the majority opinion of the state supreme court, arguing that the majority was creating a limitations period which was not written in the statute. "When [as here] the members of a court of final review disagree as to the correctness of a ruling ..., obviously a questionable point of law is involved upon which reasonable doubt may be entertained by well-informed lawyers." *Meagher v. Kavli*, 256 Minn. 54, 97 N.W.2d 370, 375 (1959).

■ Likewise, the Court finds that Cianbro is required to present expert testimony concerning the standard of care with respect to his claims that Jeffcoat was negligent for not informing it of the uncertainty of the law and not filing the mechanic's lien action at the earliest date that could be considered to be the filing deadline. Undoubtedly, if an attorney has reason to believe, or should have reason to believe that there could be some adverse consequences from taking a particular course of action, the attorney is obligated to advise the client of the possible courses of action or, failing that, to act in the most conservative fashion so as to protect the client's

---

**10.** The court instead noted that "expert testimony is permissible to establish the degree of skill and care required whenever the matters to be proved are not within the knowledge of laymen." 311 N.W.2d at 181 n. 4.

interest. However, if there is no reasonable ground for the attorney to believe that his advice is questionable, he certainly has no obligation to advise clients of every remote possibility that might exist or to act prematurely when there is no apparent reason to do so. There is no evidence in the record to establish that Jeffcoat knew that his interpretation of Section 29–5–120 may have differed from any other reasonable interpretation and, as noted, Cianbro has not presented any expert evidence to establish that Jeffcoat should have recognized that Section 29–5–120 was subject to another reasonable interpretation.[11]

### D.

Professional negligence of any kind, whether or not it is ultimately characterized as malpractice, is unsettling. The Court has a particular distaste not only for attorney negligence, but also for an attorney's failure to exert anything less than his or her best effort for the client. Besides the obvious harm that this causes to a client, the implications of an attorney's failure to provide fully competent service reach much farther than the particular attorney-client relationship. As the South Carolina Supreme Court has stated:

> The trust and confidence necessarily reposed in an attorney by a client requires of such attorney a high standard and appreciation of his duty to his clients, his profession, the courts and the public ... Nothing should be done or left undone by an attorney which tends to bring the profession into disrepute or to lessen in any degree the confidence of the public in the profession. It is a vital necessity to the well-being of society and the administration of justice that attorneys, who are officers of the court and part of our judicial system, should exhibit the most scrupulous care in conducting themselves and their business in such a manner as will secure and maintain the respect and confidence of the public in an attorney and the profession generally.

*Norris,* 142 S.E.2d at 214 (citation omitted). The Court shares these sentiments and makes no apologies for attorneys whose negligence or incompetence causes injury to their clients. Attorneys, like other professionals, must be held financially accountable to their clients, and ethically accountable to the public, for negligence or incompetence in rendering services.

However, given the ever-changing nature of the law, a distinction must be drawn between an attorney's ignorance, inattention, inaction, or incompetence, and an attorney's honest error in judgment, particularly as to an unusual or novel issue of law. Often, this distinction is not an easy one to make. Thus, it is imperative that the plaintiff in a legal malpractice action be prepared to establish attorney negligence with expert testimony unless the alleged negligence is plainly obvious to all, and the plaintiff should not readily assume that the conduct about which he complains is plainly obvious. With this expert evidence, the jury is able to analyze the attorney's conduct and measure it against the action that a competent attorney would be expected to take under the same circumstances. Without this evidence, the jury is improperly left to speculate as to the standard of conduct that the legal community should follow.

Because Cianbro would be required at trial to establish the standard of care owed (and breach thereof) by Jeffcoat in order to prevail on its claims, it must present expert testimony at the summary judgment stage in order to create a genuine issue of fact for trial on this point. *Gans v. Mundy,* 762 F.2d 338, 343 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985); *Gilliland,* 391 S.E.2d at 580. Cianbro has failed to do so. Accordingly, summary judgment must be granted against it for this reason.

### ORDER

Based on the foregoing, the Court hereby ORDERS that defendants' motions for

---

**11.** Cianbro did submit the deposition testimony of Haigh Porter, counsel for Preferred, who testified that he believed that the law concerning the timeliness of filing an action under Section 29–5–120 was clear when Jeffcoat filed the action. However, this testimony is insufficient to establish any standard of care.

summary judgment be GRANTED, Cianbro's motion for summary judgment be DENIED, and judgment be ENTERED accordingly.

IT IS SO ORDERED.